Sarah H. Concannon
Kevin C. Lombardi (*pending pro hac vice*)
SECURITIES AND EXCHANGE COMMISSION
100 F Street, NE
Washington, DC  20549
Telephone:  (202) 551-5361 (Concannon)
Telephone:  (202) 551-8753 (Lombardi)

# 18 CV 2977

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

  – against –

LONGFIN CORP.
VENKATA S. MEENAVALLI
AMRO IZZELDEN ALTAHWI a/k/a ANDY
 ALTAHAWI
SURESH TAMMINEEDI
DORABABU PENUMARTHI,

       Defendants.

-------------------------------------------------------------------x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**COMPLAINT**

**18-CV-**    (    )

**JURY TRIAL DEMANDED**

  Plaintiff Securities and Exchange Commission (the "SEC" or the "Commission"), for its

Complaint against Defendants Longfin Corp. ("Longfin"), Venkata S. Meenavalli

("Meenavalli"), Amro Izzelden Altahwi a/k/a Andy Altahawi ("Altahawi"), Suresh Tammineedi

("Tammineedi"), and Dorababu Penumarthi ("Penumarthi"), alleges as follows:

## SUMMARY

  1.  This action concerns over $27 million in unregistered distributions of Defendant

Longfin securities in a public distribution by Longfin affiliates between December 2017 and

February 2018.  Defendants Altahawi, Tammineedi, and Penumarthi conducted these sales in

violation of Section 5 of the Securities Act of 1933 ("Securities Act") [*15 U.S.C. § 77e*], which

prohibits such unregistered sales unless a specific exemption applies under the federal securities

laws. No exemption applied to these illegal transactions. Longfin and Defendant Meenavalli, Longfin's Chairman and Chief Executive Officer, participated in and are liable for the Section 5 violations of Defendants Altahawi, Tammineedi, and Penumarthi.

2.      From June 16, 2017 through December 11, 2017, Longfin sold 1,140,989 shares pursuant to SEC Regulation A [*Regulation A —Conditional Small Issues Exemption, 17 C.F.R. §§ 230.251 – 263*], a set of rules that allows issuers to publicly sell securities under procedures that are less burdensome than those that otherwise would apply if the sales were registered as required by Section 5 of the Securities Act of 1933. Pursuant to the Regulation A exemption from registration, Longfin was qualified to sell up to 10 million shares of its Class A common stock.

3.      On September 15, 2017, Longfin and Meenavalli issued Defendant Altahawi 2,025,000 Class A common shares in consideration of purported legal and business consulting services performed by Altahawi. Altahawi's shares, as described below, were restricted securities that could not be resold, except under limited circumstances.

4.      On December 13, 2017, Longfin's Class A shares began trading on The Nasdaq Stock Market, LLC (the "Nasdaq"). In connection with its voluntary Nasdaq listing, Longfin was required to register its shares pursuant to Section 12(b) of the Securities Exchange Act of 1934 ("Exchange Act") [*15 U.S.C. § 78l(b)*]. Longfin's Section 12(b) registration required the company to comply with the periodic reporting requirements of the Exchange Act, including the requirement to file quarterly reports on Form 10-Q under Exchange Act Rule 13a-13 [*17 C.F.R. § 240.13a-13*].

5.    On or about December 15, 2017, Longfin announced its acquisition of a purported cryptocurrency business named "Ziddu.com" from Meridian Enterprises Pte. Ltd., an entity at least 92%-owned by Meenavalli.

6.    Although, as alleged below, Ziddu.com had no ascertainable value, Longfin's stock price rose dramatically after Longfin publicly announced the acquisition. On December 15, 2017, Longfin's stock price opened at $9.76 per share and closed at $22.01 per share, up four-fold from the previous day's closing price of $5.39. On December 18, 2017, the next trading day, Longfin's stock price rose during trading to a high of $142.82 per share, which was an increase of over 548% from the prior day's closing price and approximately 2,662% above Longfin's closing price on its first day of trading just three days earlier.

7.    Having registered its securities under Section 12(b) of the Exchange Act, Longfin was required to file a quarterly report on or before January 8, 2018. It failed to do so. Therefore, beginning on January 9, 2018, Longfin was out of compliance with its Exchange Act periodic reporting obligations. Longfin thereafter failed to file any quarterly or annual report until April 2, 2018, when it filed its annual report on Form 10-K for 2017.

8.    Between February 8, 2018 and March 23, 2018, Altahawi sold 475,751 shares of Longfin in the public market, consisting of both the 2,025,000 shares that he received on September 15, 2017 as purported compensation and 121,000 additional restricted shares that he received from ten individuals, one or more of whom were affiliated with Longfin. No registration statement was filed or in effect for these sales, and no Securities Act exemption applied to them. Altahawi reaped profits of over $25 million from these sales.

9.    Between December 2017 and March 2018, Defendants Tammineedi and Penumarthi realized illegal profits of over $2.8 million by selling shares of Longfin that they

acquired in December 2017.  Longfin and Meenavalli authorized 30,000 shares to Tammineedi

and 40,000 shares to Penumarthi on December 6, 2017, even though Tammineedi and

Penumarthi had not transferred funds to Longfin's escrow agent in accordance with their

subscription agreements.  In addition, Tammineedi, through a nominee entity named Source

Media Limited, purchased 67,000 shares on the Nasdaq on December 13 and 14, 2017, right

before the Ziddu.com announcement.  Tammineedi and Penumarthi later sold their shares for

total profits of over $2.7 million and over $168,000, respectively.  No registration statement for

these sales had been filed or was effective, and no exemption from registration applied to

Tammineedi and Penumarthi's transactions.

      10.    This emergency action seeks to freeze the illegal proceeds received by Defendants

Altahawi, Tammineedi, and Penumarthi to maintain the *status quo* and further seeks monetary

and injunctive relief against the Defendants for their illegal distribution of Longfin securities.

      11.    By engaging in the illegal conduct described in this Complaint, the Defendants

violated and, unless restrained and enjoined, will continue to violate Section 5 of the Securities

Act.

## JURISDICTION AND VENUE

      12.    This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a)

of the Securities Act [*15 U.S.C. §§ 77t(b) and 77v(a)*].

      13.    Venue in this district is proper under Section 22(a) of the Securities Act

[*15 U.S.C. § 77v(a)*] because the Defendants transacted business and offers or sales of securities

described herein took place within the Southern District of New York.  Longfin's principal place

of business is in the City of New York, and its shares are traded on the Nasdaq, which is located

within this district.

14.    Defendants made use of the means or instruments of transportation or communication in interstate commerce or of the mails in connection with the transactions, acts, practices, and offers and sales of securities described in this Complaint.

## DEFENDANTS

15.    **Longfin Corp.** ("Longfin") is a Delaware corporation headquartered in New York, New York.  Longfin's Class A common stock is registered with the Commission pursuant to Section 12(b) of the Securities Exchange Act of 1934 [*15 U.S.C. § 78l*] and trades on the Nasdaq under the symbol "LFIN."

16.    **Venkata S. Meenavalli** ("Meenavalli") founded Longfin and is its Chairman and Chief Executive Officer.  Meenavalli individually controls over 20% of Longfin's Class A shares and over 50% of Longfin's total voting equity.  Meenavalli and his wife own approximately 17% of the voting stock of Stampede Capital Limited, a publicly listed company in India that owns approximately 27.6% of the voting stock of Longfin.  Meenavalli is the Chairman and founder of Stampede Capital Ltd.

17.    **Amro Izzelden Altahwi a/k/a Andy Altahawi** ("Altahawi"), age 54, is or was a resident of Sunny Isles Beach, Florida.  He is the president of Adamson Brothers Corp., which operates ipoflow.com, a website purporting to be "a leading equity Reg A+ offerings platform opening up the IPO access to everyone."  Altahawi has previously been associated with a number of broker-dealers registered with the SEC.

18.    **Suresh Tammineedi** ("Tammineedi"), age 48, upon information and belief, is a citizen of India residing in Hyderabad, India.  Tammineedi is affiliated with Meenavalli through several entities, including as a director of Stampede Capital Limited, which owns approximately 27.6% of the outstanding shares of Longfin.  Tammineedi and Meenavalli have been involved as

directors of several other entities, including Kling Enterprises India Ltd. and SpaceNet Enterprises India Ltd.

19.    **Dorababu Penumarthi** ("Penumarthi"), upon information and belief, is a citizen and resident of the United Kingdom.  Penumarthi is affiliated with Meenavalli through Smartahead Solutions Limited, a United Kingdom-based entity, for which Penumarthi and Meenavalli serve as directors.

## OTHER RELEVANT ENTITIES

20.    **Stampede Capital Limited** ("Stampede") is a publicly listed company in India whose voting stock is approximately 17%-owned by Meenavalli and his wife.  Stampede is one of the largest shareholders of Longfin with ownership of 27.5 million shares, representing approximately 27.6% of Longfin's total shares outstanding.

21.    **Stampede Tradex Pte. Ltd.** ("Stampede Tradex") was incorporated in the Republic of Singapore and became a subsidiary of Longfin on June 19, 2017 after an acquisition by Longfin.  Stampede Tradex subsequently changed its name to Longfin Tradex Pte. Ltd.

## BACKGROUND

22.    Under Section 5 of the Securities Act, a company (an "issuer") or any other person selling stock may only do so if it (1) registers the transaction pursuant to a valid registration statement that applies to that specific offering of stock; or (2) sells the stock in a transaction that is specifically exempt from the registration requirements of Section 5.  Section 5 applies to both the issuer and its "affiliates," which are generally persons that the issuer controls, that control the issuer, or that are under common control with the issuer.

23.    To prevent affiliates from circumventing the registration requirements, stock acquired by affiliates from the issuer or another affiliate is restricted.  To evidence this, the stock

certificate usually carries a restrictive legend that prohibits the stock from being further sold to the public unless and until the registration requirements of Section 5 are met. A "transfer agent," a person with specific responsibilities under the Exchange Act, may remove the restrictive legend when presented with evidence that the stock is no longer restricted. Once the stock is no longer restricted, that share may be sold to the public on a national securities exchange or by another means permitted under the federal securities laws.

24.    SEC Regulation A constitutes an exemption from Section 5 registration and is limited to eligible issuers as defined in the regulation. On March 25, 2015, the Commission amended Regulation A pursuant to Section 401 of the Jumpstart Our Business Startups (JOBS) Act of 2012 [*15 U.S.C. § 77c(b)(2)-(5)*]. Section 401 directed the SEC to adopt rules expanding the previous Regulation A by, among other things, exempting public offerings of up to $50 million annually (Regulation A, as amended, is commonly known as "Regulation A+").

25.    Under Regulation A, issuers must comply with different regulatory requirements depending on whether the offering is a Tier 1 offering for up to $20 million in proceeds or a Tier 2 offering for up to $50 million. In either case, no sale of a security may occur under Regulation A until (1) the issuer has filed an offering statement on Form 1-A with the Commission and (2) the Commission has issued a notice of qualification.

26.    In December 2017, Longfin, at the direction of Meenavalli, completed a Tier 2 offering under Regulation A for up to 10,000,000 of Longfin's Class A shares at a price of $5 per share. Over the course of the offering, which was first qualified in June 2017, Longfin issued a total of 1,140,989 shares purportedly sold pursuant to the Regulation A exemption. Longfin has never registered the offer or sale of any security to the public under the Securities Act.

## STATEMENT OF FACTS

*Background of Longfin and Acquisition of Ziddu.com*

27.     Longfin was incorporated in the State of Delaware on February 1, 2017. As of February 28, 2017, Longfin had total assets of $298,861, consisting almost entirely of trade receivables; total liabilities of $293,827, consisting almost entirely of trade payables; no fixed assets; and cash of $75.

28.     On June 16, 2017, under Regulation A, Longfin received its first notice of qualification from the SEC for up to 10 million of its Class A shares at a price of $5 per share, based on a previously filed offering statement on Form 1-A.

29.     On June 19, 2017, Longfin completed an acquisition of Stampede Tradex, a subsidiary of Stampede. Stampede Tradex purportedly operated an electronic platform for trading commodities and securities. Longfin described Stampede Tradex as a "global trade finance technology solution provider." After the acquisition, Longfin recorded an increase to its net assets of more than $16 million.

30.     On October 11, 2017, Longfin received a second notice of qualification from the SEC based on an amendment to its Form 1-A. The second notice of qualification was again for up to 10 million Class A shares at a price of $5 per share. As Longfin disclosed in its Form 1-A filed on October 4, 2017, the company had applied to the Nasdaq to allow its shares to be traded on the exchange.

31.     On November 22, 2017, following additional amendments to Longfin's offering statement, the SEC issued a third notice of qualification to Longfin for 10 million Class A shares at a price of $5 per share. On the same day, Longfin registered its shares with the SEC under

Section 12(b) of the Exchange Act, with such registration effective on November 24, 2017 as a precondition to trading on the Nasdaq.

32.    By December 11, 2017, Longfin sold a total of 1,140,989 shares pursuant to its Regulation A offering.

33.    On December 13, 2017, Longfin's Class A shares started trading on the Nasdaq under stock symbol "LFIN." The shares opened at $6.94 per share and closed at $5.17 per share, on a trading volume of 297,400 shares.

34.    On December 14, 2017, Longfin's shares closed at a price of $5.39 per share on a trading volume of 185,386 shares. On or about December 15, 2017, Longfin issued a press release announcing that, on December 11, 2017, it had acquired Ziddu.com. According to Longfin, Ziddu.com was a "blockchain-empowered solutions provider" that "offers a variety of sources, including microfinance lending against collateralized warehouse receipts in the shape of Ziddu coins." Longfin acquired Ziddu.com from Meridian Enterprises Pte. Ltd., an entity at least 92%-owned by Meenavalli.

35.    Prior to Longfin's acquisition, the Ziddu.com website had no ascertainable value. The website produced no revenue, and Longfin did not acquire any physical facilities, employees, market distribution systems, or production techniques. By the acquisition, Longfin acquired only the rights to use the Ziddu website and trade name. As of the date of acquisition, Longfin assigned a value of zero to Ziddu.com.

36.    During Longfin's Regulation A qualification process with the Commission, the company did not disclose any intent or plan to acquire Ziddu.com.

37.    On December 15, 2017, Longfin filed a current report on Form 8-K with the Commission (Form 8-K is a form used to report significant corporate events). The Form 8-K

attached a press release dated December 14, 2017 announcing the Ziddu.com acquisition. Separately, Longfin disclosed that its Chief Financial Officer and Chief Operating Officer had resigned on December 11, 2017.

38.     After the filing of Longfin's Form 8-K on December 15, 2017, Longfin's share price and trading volume rose significantly. Longfin's stock price opened at $9.76 per share and closed at $22.01 per share, up four-fold from the previous day's closing price of $5.39. On December 18, 2017, the next trading day, Longfin's stock price rose during trading to a high of $142.82 per share, which was an increase of more than 548% from the prior day's closing price and approximately 2,662% above Longfin's closing price on its first day of trading just three days earlier.

*Altahawi Illegally Sells Longfin Shares for Profits Exceeding $25 Million*

39.     At all relevant times, Altahawi was an affiliate of Longfin. Among other things, Altahawi used the email address andy@longfin.com to conduct business on behalf of the company, was listed as a director of Longfin in an August 2017 roadshow presentation, communicated with regulators in connection with Longfin's Regulation A offering, arranged for a transfer agent to issue shares in connection with the Ziddu.com acquisition, and served as Longfin's corporate secretary.

40.     On September 15, 2017, Longfin and Meenavalli issued to Altahawi 2,025,000 of the company's Class A shares "for professional services to the company since inception." Altahawi signed the corporate resolution authorizing issuance of these shares in his capacity as corporate secretary, and Meenavalli approved the transaction by signing the Longfin's certificate of corporate resolution to issue the shares to Altahawi. These shares later represented approximately 64% of the public float of Longfin. Because Altahawi received the shares directly

from Longfin in an unregistered transaction, the shares were restricted securities that Altahawi

could not sell into the market unless registered or pursuant to an exemption from registration

under the Securities Act.

41.    Once Longfin had completed the listing requirements for Nasdaq and voluntarily

assumed the obligations to submit periodic reports under the Exchange Act, pursuant to

Rule 13a-13 [*17 C.F.R. § 240.13a-13*], Longfin was required to file a quarterly report on

Form 10-Q for the quarter ended September 30, 2017 on or before January 8, 2017.  Longfin and

Meenavalli failed to ensure that the company did so.  Longfin was thus out of compliance with

its Exchange Act periodic reporting obligations beginning on January 9, 2018 and continuing

throughout the time period of all sales at issue in this Complaint.

42.    Between January 31, 2018 and March 6, 2018, Altahawi acquired 121,000 shares

through private transactions from ten individuals, one or more of whom were affiliates of

Longfin.  Between February 7, 2018 and March 9, 2018, Altahawi deposited 111,000 of the

121,000 shares in his Merrill Lynch account.

43.    On March 14, 2018, Altahawi also transferred the majority of the 2,025,000

shares received on September 15, 2017 into the Merrill Lynch account and the remaining 10,000

shares obtained from a shareholder into two of his brokerage accounts.

44.    Between February 8, 2018 and March 23, 2018, Altahawi sold 475,751 shares of

these transferred shares in the public market for proceeds of approximately $25,591,127.10.

These proceeds were deposited into Altahawi's account at Merrill Lynch.  Altahawi's sales of

Longfin shares were not pursuant to an effective registration statement, nor were they exempt

from registration; therefore, these sales violated Section 5 of the Securities Act.  Purchasers of

those shares did not have the benefit of the company's current information as required by the

reporting requirements of the Exchange Act, nor did they have the information that would have been provided in a registration statement.

*Tammineedi and Penumarthi Obtain Over $2.8 Million in Illegal Profits*

45.     At all relevant times, Defendant Tammineedi was an affiliate of Longfin and/or nominee of Meenavalli. Until February 2018, Tammineedi served as a director of Stampede, which was a 27.6% shareholder of Longfin. In addition, Tammineedi and Meenavalli had been involved as directors of several related entities, including Kling Enterprises India Ltd. and SpaceNet Enterprises India Ltd.

46.     Tammineedi acquired 30,000 shares from Longfin on December 6, 2017, but did not transfer funds to Longfin's escrow agent in accordance with his subscription agreement. The securities were restricted shares that could not be resold to the public absent registration or an applicable exemption. Longfin and Meenavalli directed Longfin's transfer agent to issue the shares to Tammineedi.

47.     Tammineedi tried to deposit the 30,000 shares acquired on December 6, 2017 into an account in the name of a nominee entity named Source Media Limited ("Source Media"), but the brokerage firm refused to accept the shares.

48.     On December 13 and 14, 2017, the first two days that Longfin's shares traded on the Nasdaq, Source Media bought 67,000 shares of Longfin at an average price of $5.48 per share. From December 15, 2017 through February 6, 2018, the shares were sold for approximately $2.7 million in profits, with a majority of the sales occurring in the days following the Ziddu.com announcement. Tammineedi caused most of the sales proceeds to be wired to a bank account in Singapore. Longfin had not disclosed sufficient financial information under the Exchange Act for any exemption from registration to be available.

12

49.    Tammineedi, both in his personal capacity and through nominee Source Media, realized illegal profits totaling approximately $2.7 million from December 15, 2017 through February 9, 2018.  No exemption from registration applied to Tammineedi's sales, which were in violation of Section 5 of the Securities Act.

50.    On December 6, 2017, Defendant Penumarthi acquired 40,000 Longfin Shares directly from the company in a private transaction (not from the Regulation A offering). Penumarthi never transferred funds to the escrow agent for these shares in accordance with his subscription agreement.  Longfin and Meenavalli directed Longfin's transfer agent to issue the shares to Penumarthi.

51.    At all relevant times, Penumarthi was an affiliate of Longfin and/or nominee of Meenavalli.  Penumarthi and Meenavalli were both directors of Smartahead Solutions Ltd., and Penumarthi represented on a Facebook posting that he was the head of Longfin's United Kingdom operations.

52.    After the Ziddu.com announcement, on January 23, 2018, Penumarthi sold 4,000 Longfin shares for proceeds of approximately $168,495.  No exemption applied to these unregistered sales by Penumarthi, which violated Section 5 of the Securities Act.

## CLAIM FOR RELIEF

### Violations of Securities Act Section 5

53.    As to Defendants Longfin and Meenavalli, the Commission realleges and reincorporates paragraphs 1 through 52 as if fully set forth herein.

54.    As to Defendant Altahawi, the Commission realleges and incorporates paragraphs 1 through 8 and 10 through 44 as if fully set forth herein.

13

55.     As to Defendant Tammineedi, the Commission realleges and reincorporates paragraphs 1 and 2, 4 through 7, 9 through 38, 41, and 45 through 49 as if fully set forth herein.

56.     As to Defendant Penumarthi, the Commission realleges and reincorporates paragraphs 1 and 2, 4 through 7, 9 through 38, 41, and 50 through 52 as if fully set forth herein.

57.     Between approximately December 2017 through approximately March 2018, Defendants, directly or indirectly, and without an applicable exemption:  (a) made use of the means and instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (b) for the purpose of delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means and instruments of transportation, securities as to which no registration statement was in effect; and (c) made use of means and instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

58.     By reason of the actions alleged herein, Defendants violated Section 5 of the Securities Act [15 U.S.C. § 77e] and, unless restrained and enjoined, will continue to do so.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectively requests that the Court enter:

(i)     An order imposing an asset freeze upon Defendants Altahawi, Tammineedi, and Penumarthi; directing an accounting and expedited discovery against all Defendants; and directing the repatriation of all profits from the illegal stock transactions described in this Complaint;

14

        (ii)    An order, pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure, directing service of the summons and complaint upon Defendants by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, or by any other means of alternative service not prohibited by international agreement;

        (iii)   An order against all Defendants imposing a preliminary injunction against future violations of Section 5 of the Securities Act [*15 U.S.C. § 77e*];

        (iv)   An order finding that the Defendants violated Section 5 of the Securities Act [*15 U.S.C. § 77e*];

        (v)    An order permanently enjoining Defendants from future violations of Section 5 of the Securities Act [*15 U.S.C. § 77e*];

        (vi)   An order for the Defendants to disgorge, with prejudgment interest, all of the ill-gotten gains derived from the illegal stock transactions described in this Complaint;

        (vii)  An order for the Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [*15 U.S.C. § 77t(d)*]; and

        (viii) An order granting such other relief as this Court may deem just and proper.

Dated:  April 4, 2018                    Respectfully submitted,

                                         Sarah H. Concannon, SDNY Bar Code #SC9111
                                         Tel:  (202) 551-5361
                                         Email:  ConcannonS@sec.gov
                                         Kevin C. Lombardi (*pending pro hac vice*)
                                         Tel:  (202) 551-8753
                                         Email:  LombardiK@sec.gov
                                         SECURITIES AND EXCHANGE COMMISSION
                                         100 F Street, NE
                                         Washington, DC  20549-5977
                                         Facsimile:  (202) 772-9282

Of counsel:

Anita B. Bandy
Ernesto G. Amparo
Adam B. Gottlieb
SECURITIES AND EXCHANGE COMMISSION
100 F Street, NE
Washington, DC  20549-5977