Sarah H. Concannon
Kevin C. Lombardi (*pro hac vice pending*)
SECURITIES AND EXCHANGE COMMISSION
100 F Street, NE
Washington, DC 20549-5977
Telephone: (202) 551-5361 (Concannon)
Email: ConcannonS@sec.gov
Telephone: (202) 551-8753 (Lombardi)
Email: LombardiK@sec.gov

# 18 CV 2977

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION, :
                                              :
                Plaintiff, :
                                              :     18-CV-         (   )
         – against – :
                                              :
LONGFIN CORP. :     FILED UNDER SEAL
VENKATA S. MEENAVALLI :
AMRO IZZELDEN ALTAHWI a/k/a ANDY :
  ALTAHAWI :
SURESH TAMMINEEDI :
DORABABU PENUMARTHI, :
                                              :
                Defendants. :

---------------------------------------------------------------x

**DECLARATION OF SARAH HEATON CONCANNON UNDER LOCAL CIVIL RULE
6.1(d) AND FEDERAL RULE OF CIVIL PROCEDURE 65(b)(1)(B) IN SUPPORT OF U.S.
SECURITIES AND EXCHANGE COMMISSION'S *EX PARTE* EMERGENCY APPLICATION
FOR AN ORDER TO SHOW CAUSE, FOR AN ASSET FREEZE, AND OTHER RELIEF**

I, Sarah Heaton Concannon, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a member in good standing of the bars of the State of New York and the

Commonwealth of Massachusetts and am employed by Plaintiff United States Securities and Exchange

Commission (the "Commission") in the Commission's Washington, D.C. Headquarters as Trial

Counsel.

2.      I make this declaration pursuant to Local Civil Rule 6.1(d) and Federal Rule of Civil

Procedure 65(b)(1)(B) to show that good and sufficient reason exists for bringing the Commission's *ex*

1

*parte* emergency application for an order: (i) temporarily freezing the assets in the Merrill Lynch, Pierce, Fenner & Smith Inc., Bank of America, and Interactive Brokers accounts of Defendant Amro Izzelden Altahwi (a/k/a "Andy Altahawi," and hereinafter "Altahawi"); (ii) temporarily freezing the assets in the Interactive Brokers and Western International accounts of Defendant Dorababu Penumarthi ("Penumarthi"); (iii) temporarily freezing the assets in the Interactive Brokers account of Defendant Suresh Tammineedi ("Tammineedi"); (iv) stopping payment on two Pershing LLC checks and freezing those assets; (v) ordering Defendants Altahawi, Penumarthi, Tammineedi, Longfin Corporation ("Longfin" or "LFIN"), and Venkata S. Meenavalli ("Meenavalli") (collectively, "Defendants") to provide an accounting of all proceeds received by them from sales of LFIN stock in unregistered transactions; (vi) authorizing expedited discovery and service by alternate means; (vii) repatriating proceeds received by Defendants from sales of LFIN stock in unregistered transactions; and (viii) for other relief by order to show cause rather than by notice of motion (the "Application").

3.      The Commission makes this emergency Application by order to show cause primarily to prevent Defendants Altahawi, Penumarthi, and Tammineedi from transferring to foreign accounts or otherwise dissipating the proceeds of their unlawful sales of shares of LFIN stock in unregistered transactions. Because the Commission believes that all of the Defendants are engaged ongoing distributions of Longfin stock to the public market in unregistered transactions in violation of the federal securities laws, the Commission believes that immediate and irreparable injury, loss, and damage will result if written or oral notice is provided to any of Defendants or their attorneys prior to entry of a temporary restraining order.

4.      No previous application for the relief requested herein or any similar relief has been made.

5.      The Commission makes its Application by order to show cause to (i) preserve the *status quo* pending adjudication of the Application; and (ii) ensure that any future judgment of this

Court for disgorgement, prejudgment interest, and monetary penalties is not rendered meaningless. The Commission believes that proceeding by notice of motion may jeopardize the Court's ability to grant full and effective relief both on this Application and on the merits of the Commission's Complaint, because doing so will provide Defendants Altahawi, Penumarthi, and Tammineedi with the time to move their ill-gotten gains to foreign accounts and otherwise dissipate the funds before an asset freeze order can be entered.

6.      Additionally, the Commission staff has no practical means to contact Defendants Altahawi, Meenavalli, Penumarthi, and Tammineedi, all of whom are believed to currently be outside the United States. Defendants Penumarthi and Tammineedi are citizens of the United Kingdom and India, respectively, who are believed to be residing in India. Although Defendants Meenavalli and Altahawi have, at times, resided in the United States (and Altahawi is believed to be a dual citizen of the United States and Egypt), the Commission staff understands that they are currently outside the United States. Counsel to Longfin has informed the Commission that Meenavalli is "abroad," but has not provided the Commission staff with additional information as to how to contact Meenavalli. The Commission staff believes that Altahawi is currently in Dubai, United Arab Emirates.

7.      We are therefore unable to contact Altahawi, Meenavalli, Penumarthi, and Tammineedi through traditional means and alternative means may be time consuming and will provide Defendants with time to move their ill-gotten gains to foreign bank accounts and otherwise dissipate the funds.

8.      Although Commission staff previously has been in contact with counsel to Longfin in connection with its investigation and understands that Altahawi recently may have retained counsel, it has not provided notice to Longfin or Altahawi of this emergency Application, because the Commission is concerned that doing so will tip Defendants to the Commission's Application, and risk the movement and dissipation of assets before this Court can act.

9.      The following facts are set forth in the Complaint filed by the Commission in this action

3

and in the accompanying memorandum of law and are supported by the Declaration of Robert W. Nesbitt, a member of the Commission staff, executed on April 4, 2018 ("Nesbitt Decl.") and the Complaint.

10.     The Complaint alleges that the Defendants sold millions of shares of Longfin stock to the public in unregistered transactions in violation of Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"). Longfin is a Delaware Corporation headquartered at 16-017, 85 Broad Street, New York, NY, 10004. Nesbitt Decl. ¶ 4. Longfin's Class A common stock is registered with the Commission pursuant to Section 12(b) of the Securities Exchange Act of 1934 ("Exchange Act") and, since December 13, 2017, has traded on The Nasdaq Stock Market, LLC ("Nasdaq"), a global electronic marketplace for buying and selling securities, as well as the benchmark index for U.S. technology stocks. *Id.* ¶¶ 4-7.

11.     On September 15, 2017, Altahawi was issued 2,025,000 of Longfin's Class A Common Stock by the issuer. *Id.* ¶ 8. Beginning on February 7, 2018 and concluding on March 14, 2018, Altahawi received 121,000 shares of Longfin from ten Longfin shareholders, which he deposited into his Merrill Lynch and Interactive Brokers account. *Id.* ¶ 15. On March 14, 2018, Altahawi received the previously-issued 2,025,000 shares of Longfin from the transfer agent, and deposited approximately 1,904,000 of these shares in his Merrill Lynch account, and 121,000 of these shares in his Interactive Brokers account. *Id.* ¶ 16. Between February 8, 2018 and March 23, 2018, Altahawi sold 475,751 of these shares of Longfin in the public market and obtained **$25,572,341.22** in net illegal proceeds into his brokerage account-ending -U29 at Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Altahawi's ML Account"). *Id.* ¶ 17. At least $18 million and possibly more than $22 million of these illegal proceeds remain in Altahawi's ML and Bank of America account-ending-4260, together with **1,549,249** Longfin shares. *Id.* Altahawi transferred significant assets from his ML Account between March 19 and March 21, 2018. Altahawi transferred $6MM in total from his Merrill Lynch account to his Bank of America

4

account, and at the end of March, he attempted to transfer $18.1 million in his Merrill Lynch account to his Bank of America account. *Id.*

12. On March 14, 2018, Altahawi deposited 121,000 shares of Longfin into account-ending -5975 at Interactive Brokers ("Altahawi's IB Account"). *Id.* ¶ 16. Between March 21 and March 29, Altahawi bought 34,676 LFIN shares for $1,975,388.14 and sold 60,352 LFIN shares for $3,425,029.24. *Id.* ¶ 18. As of March 31, 2018, Altahawi's IB Account holds **95,324** Longfin shares and **$1,448,000.10** in illegal net proceeds. *Id.*

13. On January 12, 2018, Penumarthi deposited 39,800 Longfin shares into his account-ending -075 at Western International ("Penumarthi's WI Account"). *Id.* ¶ 20. On January 23, 2018, Penumarthi sold 4,000 of these shares for illegal net proceeds of $169,495.62. Western International's clearing firm, Pershing, issued a check on March 1, 2018 in Penumarthi's name for the full amount of $169,495.62. According to Pershing, as of April 2, 2018, this check had not been deposited. *Id.* The Commission is seeking an asset freeze on Penumarthi's WI Account and a stop payment on the Pershing check to preserve **$169,495.62** in ill-gotten gains.

14. Penumarthi acquired 40,000 Longfin shares directly from the issuer, Longfin, on December 6, 2017. *Id.* ¶ 19. On January 24, 2018, Penumarthi deposited 2,500 shares of Longfin into account-ending -9895 at Interactive Brokers ("Penumarthi's IB Account"). *Id.* ¶ 21. On February 1, 2018, Penumarthi deposited 33,300 shares of Longfin into this account, for a total of 35,800 shares deposited. *Id.* Between February 9, 2018 and March 27, 2018, Penumarthi bought 110,731 shares of Longfin for $5,755,245.53 and sold 146,331 shares for $7,799,211.10. *Id.* As of March 31, 2018, Penumarthi's IB Account holds **200** Longfin shares and **$1,354,602.39** in illegal net proceeds. *Id.*

15. Tammineedi acquired 30,000 shares from Longfin on December 6, 2017. *Id.* ¶ 23. On January 31, 2018, Tammineedi deposited 30,000 shares of Longfin into account-ending -5218 at Interactive Brokers ("Tammineedi's IB Account"). *Id.* ¶ 24. Between March 21, 2018 and March 28,

2018, Tammineedi sold 2,200 shares of Longfin for $127,335. *Id.* As of March 31, 2018, Tammineedi's IB Account holds **27,800** shares of Longfin and **$127,309.80** in illegal net proceeds. *Id.*

16.     Tammineedi also purchased additional Longfin securities through a nominee account under the name Source Media Limited. *Id.* ¶ 25. On December 13 and 14, 2017, Source Media bought 67,000 shares of Longfin. The account sold these shares between December 15, 2017 and February 6, 2018 and obtained approximately $2.7 million in illegal profit. *Id.* Although, on information and belief, the majority of these funds were then wired to a foreign bank account in Singapore, Pershing issued a check in the amount of **$113,481.36** in the name of Source Media Limited on December 29, 2017. According to Pershing, as of April 2, 2018, this check had not been deposited. *Id.* The Commission is seeking a stop payment on the Pershing check to preserve **$113,481.36** in ill-gotten gains.

17.     Defendants Meenavalli, Penumarthi, and Tammineedi maintain foreign bank accounts that provide them the capacity to continue to transfer assets outside the jurisdiction of the Court. Given the capacity to transfer assets outside of the Court's jurisdiction and the existence of what the Commission alleges to be ill-gotten gains in Altahawi's ML Account, Altahawi's IB Account, Altahawi's Bank of America account, Penumarthi's IB Account, Penumarthi's WI Account, and Tammineedi's IB Account, there is substantial risk that Altahawi, Penumarthi, and Tammineedi will wire their funds offshore and deny the Commission the ability to obtain effective relief in the absence of a court order freezing the assets in their brokerage accounts and stopping payment on the Pershing checks.

18.     Defendants' conduct to date illustrates the risk of dissipation of the proceeds from their Longfin sales. At the end of March, Altahawi attempted to transfer at least $18.1 million in his Merrill Lynch account to an account at Bank of America. *Id.* ¶ 17. In addition, as recently as March 27 and 29, 2018, $400,000 was wired out of Penumarthi's IB Account to National Westminster Bank PL in the United Kingdom, and on April 3, 2018, Penumarthi attempted to wire an additional $200,000. *Id.* ¶ 27.

6

Additional ill-gotten gains appear to have been transferred by Tammineedi to United Overseas Bank, which is believed to be based in Singapore.

19.     Absent an immediate *ex parte* asset freeze, Defendants Altahawi, Penumarthi, and Tammineedi are likely to transfer their remaining proceeds and assets beyond the reach of the Commission or a U.S. court. According to representatives of the brokerages, in the absence of a court order, they will be forced to release assets from the accounts if Altahawi, Penumarthi, and Tammineedi insist. Giving Altahawi, Penumarthi, and Tammineedi advanced notice of the Commission's application for an asset freeze would run the risk that they would insist that their funds be immediately transferred overseas.

20.     The Commission seeks to temporarily freeze the assets in Defendants' brokerage accounts without Defendants' knowledge, so that these assets may not be dissipated or transferred overseas. Specifically, the Commission seeks to freeze the assets in Altahawi's ML Account, Altahawi's IB Account, Penumarthi's IB Account, Penumarthi's WI Account, and Tammineedi's IB Account, in which the trading described in the Commission's Complaint occurred. The Commission also seeks to freeze the assets in Altahawi's Bank of America account, to which Altahawi transferred certain proceeds of his securities law violations. The Commission further seeks to stop payment on two Pershing checks and freeze those assets. These steps are necessary to preserve the Commission's ability to collect disgorgement, civil monetary penalties, and prejudgment interest.

21.     For the reasons discussed above, the Commission submits that its emergency application for an order to show cause, for an asset freeze, and other relief should be granted *ex parte* without notice.

Executed on April 4, 2018
Washington, D.C.

Sarah Heaton Concannon
Trial Counsel
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-5977
Telephone: (202) 551-5361
Email: ConcannonS@sec.gov