UNITED STATES DISTRCIT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : 18-CV-2977 |
| | : |
| v. | : |
| | : |
| LONGFIN CORP. VENKATA S. MEENAVALLI, | : |
| AMRO IZZELDEN ALTAHWI a/k/a ANDY | : |
| ALTAHAWI, SURESH TAMMINEEDI, | : |
| DORABABU PENUMARTHI, | : |
| | : |
| Defendants. | : |

_____

**DECLARATION OF VENKATA MEENAVALLI**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

I, Venkata Meenavalli, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Venkata Meenavalli and I have been named as a Defendant in this action. I have personal knowledge of the facts within this Declaration based upon my personal knowledge, and if called upon to testify to them I could and would competently do so.

2. I am a citizen of the Republic of India. I have resided in the United Arab Emirates since 2017 and before that I resided in the Republic of Singapore since 2013.

3. I obtained my advanced diploma from Maritime Satellite Communication Australia and a post graduate Diploma in International Trade Finance from the University of Middlesex, UK. I am a Novell Certified Network Engineer, a Microsoft Certified Engineer and a Microsoft Internet Security Engineer. I have 17 years of experience in the internet, technology and finance sectors. I was the Chairman and Managing Director for Northgate Technologies Ltd., an internet and advertising company and I was the founder and Chairman of the Stampede Group of

Companies. I also previously worked as a Systems Administrator for Merrill Lynch's online trading platform

4. I am the Founder, Chairman and Chief Executive Officer of LongFin Corp. ("LongFin"). LongFin was incorporated in Delaware on February 1, 2017 and has offices in New York, New York. LongFin is an independent financial technology company that specializes in trade commodity solutions.

5. I have never been the subject of any regulatory issues.

*LongFin Corp.*

6. In June 2017 LongFin acquired 100% of the trade finance technology solution provider, Stampede Tradex Pte Ltd. ("Stampede"). At the time of its formation LongFin's business plan was to utilize Stampede's technology, strategy, infrastructure and its business model for the regions of United States of America, North America, South America, Europe, Africa and United Kingdom, and to carry the same business as being carried by Stampede for the Asia Pacific region.

7. During 2017, LongFin earned revenue from two services: structured trade finance, principally the sale of physical commodities, and monthly services related to our customers utilizing our technology platform. The Company is currently a proprietary trading member of Singapore Exchange Derivatives Clearing Limited ("SGX"), Dubai Gold and Commodities Exchange ("DGCX"), and Trade Chicago Mercantile Exchange Inc. ("CME") Group, Intercontinental Exchange ("ICE"), Hong Kong Exchanges and Clearing Limited ("HKEX"). LongFin currently has 18 personnel working full time on behalf of the Company.

*Andy Altahawi*

8. I met Altahawi in late 2016. He was introduced to me by Mr. Yogesh Patel as a consultant who could assist LongFin navigate its proposed public offering of shares under SEC Regulation A.

9. On February 1, 2017, LongFin entered into a Consulting Agreement with Altahawi's company, Adamson Brothers, Corp. pursuant to which Altahawi received, in addition to other compensation, 3% of LongFin's 67,500,000 outstanding shares pre-offering (the "Consulting Shares"). The Consulting Shares totaled 2,025,000 shares of LongFin's Class A common stock. A true and complete copy of the Consulting Agreement is attached hereto as **Exhibit A**.

10. I understand that Plaintiff alleges that Altahawi did acquire the Consulting Shares until September 2017. That allegation is incorrect and not consistent with Consulting Agreement nor is it consistent with LongFin's intent when entering into the Consulting Agreement. LongFin intended all of Altahawi's shares to be owned by him as of February 1, 2017, the date the Consulting Agreement was signed.

11. Altahawi, through his consulting company Adamson Brothers Corp., provided services related to, among other things, the preparation and filing of LongFin's Offering Statement pursuant to Regulation A with the SEC. Altahawi's compensation in the form of 3% of LongFin's outstanding shares pre-offering was disclosed in every SEC filing since the Company's inception including Form 1-A filed on March 13th, 2017, Form 1-A/A filed on April 7th, 2017, Form 1-A/A filed on April 18th, 2017, Form 1-A/A filed May 12th, 2017, Form 1-A/A filed on May 24th, 2017, Form 1-A/POS filed on July 7th, 2017, Form 1-A/POS filed on July 19th, 2017, Form 1-A/POS filed on August 10th, 2017, Form 1-A/POS filed on September 1st, 2017, Form 1-A/POS filed on

September 18th, 2017, Form 1-A/POS filed on September 29th, 2017, Form 1-A/POS filed on October 4th, 2017, and Form 1-A/POS filed on November 3rd, 2017. (See Exhibit B to the Declaration of Andy Altahawi dated April 16, 2018 submitted herewith).

12. On June 16, 2017 the SEC qualified LongFin's Form 1-A Regulation A Offering Statement, which allowed LongFin to offer its shares directly to the public without a financial intermediary. The May 23, 2017 Form 1-A states that "[w]e are offering a maximum of 10,000,000 shares of common stock on a "best efforts" basis. All subscribers will be instructed by the company or its agents to transfer funds by wire or ACH transfer directly to the company account established for this Offering or deliver checks made payable to LongFin Corp." Attached as **Exhibit B** is a true and complete copy of the SEC qualification and **Exhibit C** is true and complete copy of the relevant portion of LongFin's Plan of Distribution from its amended Form 1-A.

13. On or about July 2017, LongFin asked Altahawi to accept an appointment as Secretary of the Company. At that time, the Company was in need of a corporate Secretary to carry out a limited role for a temporary and short period of time. Altahawi agreed to accept position. LongFin disclosed Altahawi's new role as Secretary of the Company in its July 19, 2017 Post Qualification Amendment filed with the SEC. Thereafter, LongFin created a company email for his use and he signed several corporate resolutions.

14. On November 22, 2017, the SEC qualified the Company's Post-Qualification Offering Statement Amendment No. 9, which included a Plan of Distribution that stated "[w]e are offering a maximum of 10,000,000 Class A Common Shares on a "best efforts" basis. All subscribers will be instructed by the company or its agents to transfer funds by wire or ACH transfer directly to an escrow account to be established for this offering or deliver checks made payable to escrow agent." Attached as **Exhibit D** is a true and complete copy of the SEC's

November 22, 2017 Notice of Qualification and attached as **Exhibit E** is a true and complete copy of the relevant portions of LongFin's November 3, 2017 Plan of Distribution filed with the SEC.

15. On September 1, 2017, Altahawi submitted a letter to LongFin resigning as Secretary effective September 30, 2017. A true and complete copy of the resignation letter is attached hereto as **Exhibit F**.

16. On September 14, 2017, LongFin issued the 2,0025,000 shares of stock to Altahawi that he had acquired on February 1, 2017. Attached hereto as **Exhibit G** is a true and complete copy of the LongFin board of directors' resolution issuing the shares to Altahawi.

17. After September 30, 2017 Altahawi continued in his role as a consultant to LongFin.

18. Altahawi was never a director of LongFin nor was he ever a manager. Altahawi was never in a position to control LongFin nor did he ever try to do so.

19. In or about March 2018, I was contacted by Jason Carter, whom I knew to be a representative of Colonial Stock Transfer, the stock transfer agent of LongFin. At that time, Carter advised me Altahawi was seeking to have the restrictive legend removed from his Consulting Shares. I confirmed to Carter that Altahawi's 2,025,000 shares were fully earned and owned by Altahawi on February 1, 2017. Attached as **Exhibit H** is a true and complete copy of the email I sent to Carter. In the email attached as Exhibit I also specifically authorized the removal of the restrictive legend from Altahawi's shares.

20. Colonial Stock Transfer also received a legal opinion letter from Magri Law, whose principal Philip Magri is a highly experienced securities and corporate lawyer, confirming that Altahawi's shares were eligible to have their restrictions removed in March 2018 pursuant to SEC Rule 144. A true and complete copy of the Magri Law legal opinion letter received by LongFin's

stock transfer agent is attached as Exhibit A to the Declaration of Philip Magri dated April 9, 2018 and submitted herewith.

21.  Altahawi's 2,025,000 shares of LongFin properly became unrestricted in March 2018 and eligible for sale in the public market.

*The Increase in LongFin's Share Price*

22.  No public market existed for LongFin's shares until December 13, 2017 when the shares became listed on Nasdaq.

23.  The share price of LongFin increased dramatically after it announced an acquisition of Ziddu.com on December 15, 2017.  The dramatic share price increase was apparently due to the market's strong interest in blockchain technology, which is a promising new technology involving a digital ledger in which transactions made in bitcoin or other cryptocurrencies are recorded chronologically and publicly.

24.  The significant interest of investors in companies that have blockchain technology in their business plan, combined with the relatively small number of shares in LongFin's public float, apparently led to the increase in LongFin's share price – not any promotional efforts on the part of LongFin or its management team.  In fact, the Company had not begun to consider acquiring Ziddu until it was presented to LongFin's board of directors as a potential acquisition opportunity on December 10, 2017.

25.  The acquisition was approved by the board on December 11th, 2017, as disclosed in the Company's Form 8-K filed with the SEC on December 14th, 2017.  Attached as **Exhibit I** is a true and complete copy of the LongFin's December 14, 2017 Form 8-K as originally filed and **Exhibit J** is the accompanying press release LongFin issued.

26. Other than announcing the acquisition, neither I nor the Company took any steps that lead up to the dramatic increase in LongFin's share price. In fact, in a CNBC interview on December 18, 2017 I stated that I did not believe the significant increase in LongFin's market capitalization was warranted at that time. Attached as **Exhibit K** is an article from the CNBC web site that reflects my appearance on December 18, 2017 and my comments that the market capitalization of LongFin was not warranted at that time.

*Altahawi's Purchase of LongFin Shares from 10 Selling Shareholders*

27. I am aware that the Plaintiff has alleged that ten individuals from whom Altahawi purchased LongFin shares pursuant to a January 12, 2018 Stock Purchase Agreement were affiliates of LongFin. That allegation is false. None of these individuals were affiliated with the Company for purposes of Rule 144.

28. Each of the ten investors acquired their LongFin shares in the Company's Regulation A offering and paid the company directly. Altahawi entered into a stock purchase agreement with those ten investors to acquire their shares for $30 per share, which was about the current market price at the time the agreement was entered into. A copy of the stock purchase agreement is attached to the Altahari Declaration as Exhibit D.

29. While one of the selling shareholders is LongFin's chief investment officer and an executive director in Stampede, this individual doesn't own any shares in LongFin besides the Regulation A shares he purchased and his ownership interest in Stampede is less than 1%. This individual did not have the power to direct or control LongFin nor was he was under my control.

30. Another one of the ten selling shareholders was an advisor for quantitative and technical trading for the Company, however he doesn't own any shares other than the Regulation

A shares and has no other connection to LongFin. This individual likewise does not have the power to direct or control LongFin, nor is he under my control.

31. The remaining eight individuals do not have any other relationship with LongFin other than being shareholders.

32. I am aware that the Plaintiff in the above action has alleged that Altahawi was an "affiliate" of LongFin in January 2018. That allegation is false. Altahawi is an independent consultant who has never been in a position to control LongFin. While Altahawi did act as the Company's Secretary for a short period of time his position ended when Altahawi submitted his resignation letter, which was effective September 30, 2017. Altahawi has never been a director of LongFin nor been in a position to affect the management or policies of LongFin. Altahawi and I are not parties to any contract or agreement and we do not own or operate any businesses together. We are also not related by blood or marriage.

33. I am aware that the SEC has referenced LongFin's employment of Altahawi's daughter Sarah in support of its argument that Altahawi is an affiliate of LongFin. Sarah Altahawi, who is 23 years old, has never owned any shares of LongFin stock and she was never in a position to control LongFin.

34. Therefore, each of the individuals who Altahawi acquired the LongFin shares from had purchased the shares in LongFin's Regulation A offering and therefore my understanding is that these shares were freely tradeable because neither the sellers nor Altahawi are affiliates for purposes of Rule 144.

35. On February 27, 2018 LongFin was issued a comment letter by the Staff of the SEC. This comment letter made no mention of the fact that the Staff viewed LongFin to be delinquent in its filings under the Exchange Act. A true and complete copy of the comment letter

is attached hereto as **Exhibit L**. LongFin was permitted to continue trading from January 8, 2018, to April 6, 2018.

*Suresh Tammineedi*

36. I have known Suresh Tammineedi since childhood. Tammineedi and I grew up together and attended primary school together in India. Tammineedi has never held a position in management with LongFin nor otherwise been employed by the company. Tammineedi has never been a director of LongFin nor been in a position to affect the management or policies of LongFin. Tammineedi and I are not parties to any contract or agreement and we do not own or operate any businesses together. We are also not related by blood or marriage.

37. I am aware that the Plaintiff in the above action has alleged that Tammineedi is an "affiliate" and an "insider" of LongFin. These allegations are false for the reasons described above. In addition, neither LongFin nor I control Tammineedi in any way and he has made his own independent decisions concerning his purchases and sales of LongFin stock.

38. Plaintiff alleges that I am "affiliated" with Tammineedi through several entities, including Stampede Capital, Kling Enterprises India Ltd ("Kling")., and SpaceNet Enterprises India Ltd. ("SpaceNet"). These allegations are also without merit. I resigned from Kling (formerly known as Stampede Holdings Ltd.) on June 28, 2013. A true and complete copy of the certificate of name change filed with the Government of India's Ministry of Corporate Affairs is attached as **Exhibit M** and a true and complete copy of my resignation form filed with the Government of India's Ministry of Corporate Affairs is attached as **Exhibit N**.

39. I also resigned from SpaceNet (formerly known as Northgate Com Tech Limited) on August 14, 2014. A true and complete copy of my resignation form from SpaceNet as filed with the Government of India's Ministry of Corporate Affairs is attached as **Exhibit O**.

40. To my knowledge Tammineedi was not a promoter or investor in Stampede Capital, Kling Enterprises India Ltd., or SpaceNet.

41. Plaintiff alleges that Tammineedi is a "director of Stampede, which owns approximately 26% of LongFin's stock and is its majority shareholder, giving Tammineedi the ability to exercise control over LongFin." These allegations are untrue. Tammineedi resigned his position as director of Stampede on October 20, 2017, which was effective the same day. See the resignation letter attached as Exhibit A to Tammineedi's declaration. Tammineedi never had the power to direct any of LongFin's policies or activities and he was not under the control of LongFin or Meenavalli.

*Dorababu Penumarthi*

42. I have known Dorababu Penumarthi for many years.

43. Penumarthi and I are not related by blood or marriage.

44. Penumarthi and I are not currently parties to any contract or agreement; we do not own or operate any businesses together.

45. I was formerly a director in Smartahead Solutions, Ltd. Penumarthi was also a Director in the company. However, I resigned as Director of Smartahead Solutions, Ltd on June 5, 2013. My understanding is that Penumarthi eventually acquired 100% ownership of Smartahead Solutions, Ltd. and continues to own its successor entity. I have no ownership interest in the successor entity to Smartahead Solutions, Ltd. I am not employed by it or otherwise involved with the successor company in any way.

46. LongFin entered into an agreement with Penumarthi dated July 1, 2017 to act as a consultant to LongFin, but that consulting agreement terminated by its own terms on September

30, 2017.  A true and complete copy of the agreement with Penumarthi is attached hereto as **Exhibit P**.

47. I understand that Penumarthi represented himself on Facebook as head of LongFin's UK operations.  However, that characterization of Penumarthi's role is incorrect.

48. Plaintiff characterizes Penumarthi as an "insider and affiliate" of LongFin and "under common control of me and of LongFin."  These allegations are not true.  In addition, neither LongFin nor I control Penumarthi in any way and he has made his own independent decisions concerning his purchases and sales of LongFin stock.

49. Plaintiff alleges that Penumarthi acquired shares in LongFin but did not pay for them through an escrow account.  In fact, Penumarthi acquired and paid for his shares directly from the Company.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED:     Hyderabad, India
           April 17, 2018

*/s/ Venkata Meenavalli*
Venkata Meenavalli