**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————————————
                                   :

SECURITIES AND EXCHANGE COMMISSION, :
                                   :

                    Plaintiff,   :      18-CV-2977
                                   :

          v.                    :

LONGFIN CORP. VENKATA S. MEENAVALLI, :
AMRO IZZELDEN ALTAHWI a/k/a ANDY   :
ALTAHAWI, SURESH TAMMINEEDI,       :
DORABABU PENUMARTHI,            :

                                   :

                Defendants.  :
———————————————————————————————

**DEFENDANTS VENKATA S. MEENAVALLI, AMRO IZZELDEN ALTAHWI a/k/a/**
**ANDY ALTAHAWI, SURESH TAMMINEEDI AND DORABABU PENUMARTHI'S**
**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A**
**PRELIMINARY INJUNCTION**

Robert G. Heim
MEYERS & HEIM, LLP
1350 Broadway, Suite 514
New York, NY 10103
Tel. (212) 355-7188
Fax. (212) 355-7190
rheim@meyersandheim.com

*Attorneys for Defendants Venkata S.*
*Meenavalli, Amro Izzelden Altahwi a/k/a*
*Andy Altahawi, Suresh Tammineedi and*
*Dorababu Penumarthi.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT . . . . . . . . 1

DEFENDANTS . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . 6

    A. Background on LongFin . . . . . . . 6

    B. Altahawi Was a Consultant to LongFin and Acquired
    Consulting Shares on February 1, 2017 . . . . . 7

    C. Altahawi Was Provided with a Legal Opinion Letter That
    Stated He was Permitted to Sell His Consulting Shares . . . 9

    D. Altahawi Properly Acquired and Sold LongFin Shares
    From Ten Individual Shareholders . . . . . 10

    E. Tammineedi and Penumarthi are Not Affiliates of LongFin
    or Meenavalli . . . . . . . . 11

ARGUMENT . . . . . . . . . . 12

I.    THE SEC FAILED TO SHOW A LIKELIHOOD IT WILL
    BE SUCCESSFUL IN PROVING A SECTION 5 VIOLATION
    AS AGAINST THE INDIVIDUAL DEFENDANTS – ALL SALES
    WERE EITHER EXEMPT FROM REGISTRATION OR
    PROPERLY TRADED IN THE PUBLIC MARKET . . . 12

    A.    Legal Standard for a Preliminary Injunction
    and Asset Freeze . . . . . . . 12

    B.    Background on Section 5 and SEC Rule 144 . . . . 13

    C.    Altahawi is Not an Affiliate of LongFin . . . . 14

    D.    Altahawi Satisfied the One Year Holding Period
    Requirement Under Rule 144(b)(1) . . . . . 15

    E.    Altahawi's Sales of his Consulting Shares Were Also
    Permitted by Rule 144(d)(1) . . . . . . 16

    F.    Altahawi's Sales of His Consulting Shares Are Also
    Exempt from Registration Pursuant to Section 4(a)(1)

of the Securities Act . . . . . . . 18

G. Altahawi's Shares Acquired from the 10 Stockholders
Could be Freely Traded; the Shares Were Purchased
from Non-Affiliate Sellers Who Acquired Their Shares
in LongFin's Regulation A Offering . . . . . 19

H. Tammineedi's and Penumarthi's Sales of LongFin
Stock Did Not Violate Section 5 of the Securities Act . . 20

II. THE SEC CANNOT MEET ITS BURDEN TO SHOW
SECONDARY LIABILITY FOR A SECTION 5
VIOLATION BY VENKATA MEENAVALLI – THERE
IS NO "PRIMARY" VIOLATION AND MEENAVALLI'S
INVOLVEMENT NOT A "SUBSTANTIAL FACTOR" . . 22

III. THE COURT MUST CONSIDER FAIRNESS TO THE
DEFENDANTS AND THE ADVERSE EFFECT OF AN
INJUNCTION AND ASSET FREEZE . . . . . 24

CONCLUSION . . . . . . . . . 26

## <u>TABLE OF AUTHORITIES</u>

**Page**

**<u>Cases</u>**

*Ackerberg v. Johnson,* 892 F.2d 1328 (8th Cir. 1989)    .    .    .    .    18

*Hecht Co. v. Bowles*, 321 U.S. 321 (1944)    .    .    .    .    .    .    24

*SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012) .    .    .    .    .    .    22

*SEC v. Broadwell Securities, Inc.,* 240 F.Supp. 962, 967 (S.D.N.Y.1965)   .    .    24

*SEC v. Cavanaugh*, 155 F.3d 129 (2nd Cir. 1998)

*SEC v. Czarnik*, No. 10 Civ. 745, 2010 WL 4860678 (S.D.N.Y. Nov. 29, 2010)   .    22

*SEC v. East Delta Resources Corp.*, 2012 U.S. Dist. LEXIS 127644 at *9
(E.D.N.Y. Aug. 31, 2012)    .    .    .    .    .    .    .    .    22

*SEC v. Elliott*, 2011 U.S. Dist. LEXIS 91946 at *21 (S.D.N.Y. Aug. 17, 2011)   .    22

*SEC v. Harwyn Industries Corporation,* 326 F.Supp. 943 (S.D.N.Y. 1971) .    .    24

*SEC v. Hemp, Inc.*, 2018 U.S. Dist. LEXIS 38396    .    .    .    .    .    13

*SEC v. Murphy,* 626 F.2d 633 at 651-52 (9th Cir. 1980)    .    .    .    .    22

*SEC v. Ralston Purina Co*., 346 U.S. 119, 126 (1953)    .    .    .    .    3, 23

*SEC v. Rogers*, 790 F.2d 1450, 1456 (9th Cir. 1986), *overruled on
other grounds by Pinter v. Dahl, 486 U.S. 622 (1988).*    .    .    .    .    22

*SEC v. Universal Exp.,* 475 F.Supp.2d 212, 422 (S.D.N.Y. 2007)   .    .    .    22

*Smith v. SEC*, 653 F.3d 121 (2nd Cir. 2011)   .    .    .    .    .    .    24

*United States v. Sherwood*, 175 F. Supp. 480, 483 (S.D.N.Y. 1959)    .    .    19

**<u>Statutes and Rules</u>**

Section 2(a)(11) of the Securities Act of 1933    .    .    .    .    .    13, 18

Section 4(a)(1) of the Securities Act.   .   .   .   .   .   13, 18

Section 5 of the Securities Act   .   .   .   .   .   .   .   *passim*

SEC Rule 144 (17 C.F.R. 230.144)   .   .   .   .   .   .   .   *passim*

Rule 144(b)(1) (17 C.F.R. 230.144(b)(1)   .   .   .   .   .   .   10, 15, 16

Rule 144(d)(1) (17 C.F.R. 230.144(d)(1)   .   .   .   .   .   .   16

Rule 13a-13 (17 C.F.R. 230 13a-13)   .   .   .   .   .   .   .   16, 17

SEC Regulation A   .   .   .   .   .   .   *passim*

### SEC No-Action Letters

*First Gen'l Resources Co.*, SEC No-Action Letter, [1988-89 Transfer Binder]
Fed. Sec. L. Rep. (CCH) ¶ 78,251 at 78,253 (Aug. 23, 1988)   .   .   .   13

*American Standard*, SEC No-Action Letter, 1972 SEC No Act. LEXIS
3787 at *1 (Oct. 11, 2972)   .   .   .   .   .   .   .   .   14

Defendants, Venkata S. Meenavalli ("Meenavalli"), Amro Izzelden Altahwi a/k/a Andy Altahawi ("Altahawi") Suresh Tammineedi ("Tammineedi") and Dorababu Penumarthi ("Penumarthi") (collectively the "Individual Defendants"), by their counsel, respectfully submit this Memorandum of Law in Opposition to Plaintiff Securities and Exchange Commission's ("SEC") Motion for a Preliminary Injunction (the "Motion").

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of the Individual Defendants, in opposition to the motion filed by Plaintiff Securities and Exchange Commission for a preliminary injunction (the "Motion"). In the Motion, Plaintiff requests that this Court enter an order (i) temporarily freezing the assets in Defendants Altahawi's, Penumarthi's, and Tammineedi's brokerage accounts and Altahawi's Bank of America account; (ii) stopping payment on two checks and freezing those assets; (iii) ordering Defendants to provide an accounting of all proceeds received by them from sales of LongFin Corp. ("LongFin" or the "Company") stock in unregistered transactions; (iv) authorizing expedited discovery and service by alternate means; (v) repatriating proceeds received by Defendants from sales of LFIN stock in unregistered transactions; and (vi) for other relief. (See SEC Memorandum of Law dated April 4, 2018 "SEC Memo of Law")

As fully set forth below, Plaintiff's Motion must be denied in its entirety as the Commission has failed to meet its burden in establishing a substantial likelihood of success on the merits of its claim, which alleges the sales of shares of LongFin by Altahawi, Tammineedi and Penumarthi violated the registration provisions of Section 5 of the Securities Act of 1933 ("Securities Act"). Contrary to the SEC's allegations, all of the sales of LongFin securities referenced in the Complaint were done in compliance with Section 5 of the Securities Act. As discussed in detail below,

1

Altahawi's sales of a portion of the LongFin shares he acquired in exchange for providing consulting services ("Consulting Shares") is permitted under SEC Rule 144 and under Section 4(a)(1) of the Securities Act.  The 121,000 LongFin shares that Altahawi acquired from ten other investors were all originally sold in LongFin's Regulation A offering and were free trading. Because neither Altahawi nor any of the ten sellers were affiliates of the Company for Rule 144 purposes there were no restrictions on Altahawi's ability to sell these LongFin shares.

Tammineedi and Penumarthi were also not affiliates of LongFin for Rule 144 purposes and they each acquired their LongFin shares in the Company's Regulation A offering.  The shares that Tammineedi and Penumarthi sold were not restricted and their sales were in full compliance with Section 5 of the Securities Act.

Moreover, contrary to the Commission's assertion that there was a common scheme by insiders and affiliates of LongFin to sell shares in unregistered distributions, the evidence shows that: (i) Altahawi was an experienced consultant who provided valuable services to LongFin since the Company's inception and acquired his Consulting Shares over a year before he sold any of the shares; (ii) Altahawi and the ten selling shareholders of LongFin were not affiliates of the Company; and (iii) Tammineedi and Penumarthi were individual investors who were not affiliates of LongFin who purchased free trading shares based on their independent review of the Company and its business prospects and who independently and properly sold some of their shares after the Company's stock price increased substantially.

Moreover, Altahawi has never met, or spoken  to Tammineedi or Penumarthi, and knew nothing about them until the SEC filed its Complaint.  In addition, Tammineedi and Penumarthi are not related by blood or marriage and they don`t have a business or personal relationship with each other.  Since Altahawi's, Tammineedi's and Penumarthi's sales did not violate the Section 5 registration requirements there was no primary violation and Defendant Meenavalli cannot be held

liable as a secondary actor.  *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953)(a defendant may rebut a prima facie case by showing that the securities involved were not required to be registered.)

Altahawi, Tammineedi and Penumarthi all took a significant financial risk when they acquired their LongFin shares because they each acquired their shares before any substantial public market existed for the Company's shares.  There is no evidence that Meenavalli, the founder and Chairman of LongFin, directed or controlled the purchasing or selling decisions of Altahawi, Tammineedi or Penumarthi and there is no allegation that Meenavalli had any financial interest in any of the sales proceeds that were generated when the other Individual Defendants sold a portion of their LongFin shares.

For the reasons described herein the Individual Defendants respectfully request that the Court: (i) vacate the temporary asset freeze that is in place against Defendants Altahawi's, Penumarthi's, and Tammineedi's brokerage accounts and Altahawi's Bank of America account; (ii) permit payment on two checks payable to Tammineedi and Penumarthi that was stopped under the Court's Temporary Order; (iii) deny the Commission's request for an accounting of all proceeds received by the Individual Defendants' sales of LongFin stock in unregistered transactions; (iv) vacate the portion of the order that authorized expedited discovery and service by alternate means; (v) deny the Commission's request for an order repatriating proceeds received by Defendants from sales of LongFin stock in unregistered transactions; and (vi) deny the Commission's request for other relief.

## DEFENDANTS

LongFin is an independent financial technology ("Fintech") company that specializes in trade commodity solutions.  LongFin was incorporated in Delaware on February 1, 2017 and has offices in New York, New York.  (See Paragraph 4 of the Declaration of Venkata Meenavalli dated April 17, 2018 ("Meenavalli Decl.") submitted herewith)

Meenavalli is technology entrepreneur with 17 years of experience in the Internet, technology and finance sectors.  Meenavalli holds a Post Graduate Diploma in Trade Finance from the University of Middlesex, UK and an advanced diploma in Maritime Satellite Communication. Meenavalli is a Novell Certified Network Engineer, a Microsoft Certified Engineer and a Microsoft Internet Security Engineer. Meenavalli previously was the Chairman and Managing Director for Northgate Technologies Ltd., an Internet and advertising company and he was the founder and Chairman of the Stampede Group of Companies.  Meenavalli also previously worked as a Systems Administrator for Merrill Lynch's online trading platform.  ("Meenavalli Decl. at 3)

Altahawi is an experienced financial executive and a citizen of the United States.  Altahawi resides exclusively in the United States in Sunny Isles Beach, Florida.  Altahawi has over 24 years' experience in the United States securities industry.  Altahawi began working in the securities industry in 1994 and over the course of his career obtained the Series 3, 4, 6, 7, 24, 55, 63, 65 , and 79 licenses and worked for several registered broker dealers, including Prudential Securities, in1999, Altahawi started his own broker-dealer – Adamson Brothers Inc. – of which he was the sole owner and CEO. At its peak, Adamson Brothers Inc. employed 65 brokers in 3 offices. Adamson Brothers Inc. was a full-service broker dealer engaged in retail of equities, bonds, options, mutual funds, market making and investment banking focusing on public and private offerings.  As the CEO of Adamson Brothers Inc., Altahawi held ultimate responsibility for the supervision of the firm's overall business and registered representatives from 1999 to 2007. Notably, neither Altahawi nor his firm Adamson Brothers, Inc., ever had a customer complaint. Altahawi and his firm also never were cited for any regulatory violations by the SEC or any self-regulatory organization.  Altahawi has experience in Regulation A offerings, private placements, initial public offerings, and special-purpose acquisition companies covering equity and debt private placements.  Altahawi also has experience with fairness and solvency opinions.   With

4

securities industry experience spanning over 24 years, Altahawi is very familiar with SEC rules and industry practices and procedures.  Over the course of Altahawi's career he has had experience in Regulation A filings, equity and debt private placements, initial public offerings and mergers and acquisitions.   Altahawi holds civil  law degree from Egypt and he is admitted in Egypt, the European Court of Human Rights, and United Nations High Commission for Human Rights.  In 2016 Altahawi formed Adamson Brothers, Corp. which offers consulting services to emerging growth companies to assist in their efforts to qualify Regulation A offerings with the SEC.  (See Paragraphs 2-7 of the Declaration of Andy Altahawi dated April 17, 2018 ("Altahawi Decl.") submitted herewith)

Tammineedi is a citizen of India and currently resides in Telangana, India.  Tammineedi attended the Department of Technical Education, Government of Karnataka in Harapanahalli, India from 1987 to 1992 and obtained a Diploma in Mechanical Engineering in 1992.  Tammineedi works in his own business in India and he has never held a management position with LongFin Corp., nor has he ever been an officer or director of LongFin.  The allegation that Tammineedi is an affiliate or nominee of LongFin or Meenavalli is without merit.  Tammineedi made all of his own investment and trading decisions with regards to his investment in LongFin.  Tammineedi is also not related by blood or marriage to Meenavalli.  (See Paragraphs 2-12 of the Declaration of Suresh Tammineedi dated April 17, 2018 ("Tammineedi Decl.") submitted herewith)

Penumarthi is a non-resident Indian and citizen of the United Kingdom who resides in Dorset, United Kingdom with his wife and two children.  In 1999 Penumarthi earned a Bachelor of Engineering degree in Instrumentation and Control Engineering from the St. Joseph's College of Engineering at the University of Madras, Chennai, Tamil Nadu, India.  Penumarthi has owned and operated an information technology ("IT") consultancy business in the United Kingdom for many years.  Penumarthi is not related by blood or marriage to Meenavalli. The allegation that

Penumarthi is an affiliate or nominee of LongFin or Meenavalli is without merit. Penumarthi made all of his own investment and trading decisions with regards to his investment in LongFin. Penumarthi is also not related by blood or marriage to Meenavalli (See Paragraphs 2-11 of the Declaration of Dorababu Penumarthi dated April 17, 2018 ("Penumarthi Decl.") submitted herewith)

## STATEMENT OF FACTS

### A.    Background on LongFin

LongFin is an US based financial technology ("Fintech") company that specializes in trade commodity solutions. LongFin was incorporated in Delaware on February 1, 2017 and has offices in New York, New York. (Meenavalli Decl. at para. 6-7 )

In July 2017 LongFin acquired 100% of the trade finance technology solution provider, Stampede Tradex Pte Ltd. ("Stampede")(Meenavalli Decl, at para 6-7).  At the time of its formation LongFin's business plan was to utilize Stampede's technology, strategy, infrastructure and its business model for the regions of United States of America, North America, South America, Europe, Africa and United Kingdom, and to carry the same business as being carried by Stampede for the Asia Pacific region. Venkata Meenavalli is the Chairman of LongFin and the founder of Stampede. (Id.)  LongFin was qualified by the SEC to conduct a Regulation A offering of its shares. However, no public market existed for LongFin's shares until December 13, 2017 when the shares became listed on Nasdaq.   (Meenavalli Decl. at 22)

The share price of LongFin increased dramatically after it announced an acquisition of Ziddu.com on December 15, 2017.  The dramatic share price increase was apparently due to the market's strong interest in blockchain technology, which is a promising new technology involving a digital ledger in which transactions made in bitcoin or other cryptocurrencies are recorded chronologically and publicly.  (Meenavalli Decl. at 24)  The significant interest of investors in

6

companies that have blockchain technology in their business plan, combined with the relatively small number of shares in LongFin's public float, apparently led to the increase in LongFin's share price – not any promotional efforts on the part of LongFin or its management team. The acquisition was approved by the board on December 11th, 2017, as disclosed in the Company's Form 8-K filed originally filed with the SEC on December 14th, 2017. (Meenavalli Decl. at 25) In addition, Meenavalli in a CNBC interview on December 18, 2017 stated that he did not believe the significant increase in LongFin's market capitalization was warranted at that time. (Id. at para 26)

**B.    Altahawi Was a Consultant to LongFin and Acquired Consulting Shares On February 1, 2017**

In late 2016, Altahawi was introduced to LongFin CEO Venkata S. Meenavalli to assist LongFin in its proposed SEC filing under Regulation A. After discussing the company's needs, Altahawi agreed on behalf of his company Adamson Brothers, Corp. to consult with LongFin pursuant to the terms of a Consulting Agreement dated February 1, 2017 ("Consulting Agreement"). Pursuant to the terms of the Consulting Agreement, LongFin paid Altahawi, in addition to other consideration, 3% of LongFin's 67,500,000 outstanding shares pre-offering (the "Consulting Shares"). Altahawi fully acquired the Consulting Shares on February 1, 2017 and this was confirmed by LongFin in an email to Colonial Stock Transfer, LongFin's stock transfer agent. (Altahawi Decl. at 8-10)

Altahawi, through his consulting company Adamson Brothers Corp, provided services related to, among other things, the preparation and filing of LongFin's Offering Statement pursuant to Regulation A with the SEC. Altahawi's compensation in the form of 3% of LongFin's outstanding shares pre-offering was disclosed in every SEC filing since the Company's inception including: (a) Form 1-A filed on March 13th, 2017; (b) Form 1-A/A filed on April 18th, 2017; (c) Form 1-A/A filed May 12th, 2017; (d) Form 1-A/A filed on May 24th, 2017; (e) Form 1-A/POS

filed on July 7th, 2017; (f) Form 1-A/POS filed on July 19th, 2017; (g) Form 1-A/POS filed on August 10th, 2017; (h) Form 1-A/POS filed on September 1st, 2017; (i) Form 1-A/POS filed on September 18th, 2017; (j) Form 1-A/POS filed on September 29th, 2017; (k) Form 1-A/POS filed on October 4th, 2017, and (l) Form 1-A/POS filed on November 3rd, 2017.  (Altahawi Decl. at para. 11)

On June 16, 2017 the SEC qualified LongFin's Form 1-A Regulation A Offering Statement, which allowed LongFin Corp to offer its shares directly to the public without a financial intermediary.  The May 23, 2017 Form 1-A states "[w]e are offering a maximum of 10,000,000 shares of common stock on a "best efforts" basis.  All subscribers will be instructed by the company or its agents to transfer funds by wire or ACH transfer directly to the company account established for this Offering or deliver checks made payable to LongFin Corp." (Altahawi Decl. at para. 12)

On or about July 2017, LongFin Corp asked Altahawi to accept an appointment as Secretary of the Company.  At that time, the Company was in need of a corporate Secretary to carry out a limited role for a temporary and short period of time.  Under those conditions, and in light of his prior work for the Company pursuant to the Consulting Agreement, Altahawi agreed to accept position.  LongFin disclosed Altahawi's new role with the Company in its July 19, 2017 Post Qualification Amendment.  Thereafter, LongFin Corp. created a company email for his use and he signed several corporate resolutions.

In or about July 2017, Altahawi  was offered a director and management position with the Company.  However, he declined to accept either of these positions.  Altahawi was residing in Florida and the company is located in New York City and Altahawi did not think it was practical for him to assume either role.  In addition, Altahawi was working with other entities as a consultant. (Altahawi Decl. at 14)

On September 1, 2017, Altahawi submitted a letter to LongFin resigning as Secretary effective September 30, 2017.  Thereafter, Altahawi continued in his role as a consultant to LongFin.  (Altahawi Decl. at para. 15)

On November 22, 2017 the SEC qualified the Company's Post-Qualification Offering Statement Amendment No. 9, which included a Plan of Distribution that stated "[w]e are offering a maximum of 10,000,000 Class A Common Shares on a "best efforts" basis. All subscribers will be instructed by the company or its agents to transfer funds by wire or ACH transfer directly to an escrow account to be established for this offering or deliver checks made payable to escrow agent."

On September 14, 2017 LongFin issued the Consulting Shares to Altahawi.  At that time LongFin also confirmed with Colonial Stock Transfer, the Company's stock transfer agent, that Altahawi had fully acquired the Consulting Shares on February 1, 2018.  (Meenavalli Decl. at para. 19 )

### C.    Altahawi Was Provided with a Legal Opinion Letter That Stated He was Permitted to Sell His Consulting Shares

After complying with the one year holding period that began on February 1, 2017 Altahawi engaged Magri Law LLC in or about February 16, 2018 to review his acquisition of the 2,025,000 shares of Class A Common Stock (the "Shares"), of LongFin.  Altahawi understood Phil Magri, the principal of Magri Law to have 22 years of experience in the area of securities law and was very qualified to opine on whether Rule 144 would permit me to sell my shares.  (Altahawi Decl. at 20-21)

Altahawi provided Magri Law: (i) a Non-Affiliate Seller's Representation Letter, dated March 5, 2018 confirming Altahawi was not an affiliate of the Company under Rule 144(a)(1) as of March 5, 2018 and that Altahawi had not been an affiliate of the Company during the 90 days prior.  Altahawi also provided Magri Law his Consulting Services Agreement, dated February 1,

9

2017 with LongFin and Adamson Brothers Corp.   Altahawi also provided to Magri Law
Amendment No. 9 to the Company's Form 1-A , which was filed by the Company with the SEC
on November 3, 2017 and qualified by the SEC on November 22, 2017.   In that Amendment No.
9 the Company disclosed on page 28 that the Company issued the Shares to the Adamson Brothers
in connection with the Consulting Services Agreement.   (Altahawi Decl. at 20-21)

Magri Law's analysis showed that Altahawi had legally acquired the Consulting Shares on
February 1, 2017 (and therefore had held the Shares for over one year as of the date of the legal
opinion), that Altahawi was not an affiliate of the Company under Rule 144(a)(1) as of the date of
the opinion letter nor had Altahawi been an affiliate for at least 90 days prior thereto.   Magri Law's
legal opinion letter concluded that Altahawi was permitted to sell the Consulting Shares without
registration pursuant to Rule 144(b)(1).   A copy of the Magri Law opinion letter and the exhibits
thereto is attached to the Margi Declaration dated April 9, 2018 as Exhibit A

Magri Law's legal opinion letter was provided to Colonial Stock Transfer and the
restriction on the Shares was removed.   Altahawi thereafter deposited the Consulting Shares into
an account in my name at Merrill Edge, which is the discount brokerage arm of Merrill Lynch.
Altahawi began to sell some of the Consulting Shares beginning in March 2018.

### D.  Altahawi Properly Acquired and Sold LongFin Shares
### From Ten Individual Shareholders

From January 2018 to March 2018 Altahawi acquired 121,000 LongFin shares through
private transactions from ten individuals.   None of these individuals were affiliated with the
Company for purposes of Rule 144.  (Meenavalli Decl. at 27)  While one of the selling shareholders
is LongFin's chief investment officer and an executive director in Stampede this individual doesn't
own any shares in LongFin besides the Regulation A shares he purchased and his ownership
interest in Stampede is less than 1%.   This individual did not have the power to direct or control

LongFin nor was he was under the control of Meenavalli.  Another one of the ten selling shareholders was an advisor for quantitative and technical trading for the Company, however he doesn't own any shares other than the Regulation A shares and has no other connection to LongFin. This individual likewise does not have the power to direct or control LongFin.  (Meenavalli Decl. at 27-31)

The remaining eight individuals do not have any other relationship with LongFin. (Id.) Therefore, each of the individuals who Altahawi acquired the LongFin shares from had purchased the shares in LongFin's Regulation A offering and therefore these shares were freely tradeable because neither the sellers nor Altahawi are affiliates for purposes of Rule 144.

### E.    Tammineedi and Penumarthi are Not Affiliates of LongFin or Meenavalli

Defendants Tammineedi and Penumarthi are two individual investors who purchased shares in LongFin's Regulation A offering for their own account. (Tammineedi Decl. at para. 11 and 12; and Penumarthi Decl. at para. 10)

The SEC's allegation that Tammineedi served as a director of Stampede Capital until February 2018 is not true.  Tammineedi resigned his position as director on October 20, 2017, which was effective the same day.  Tammineedi never had the power to direct any of LongFin's policies or activities and he was not under the control of LongFin or Meenavalli.  (Tammineedi Decl. at 11)

With regards to Penumarthi, he did have an agreement with LongFin dated July 1, 2017 to act as a consultant to LongFin but hat consulting agreement ended by its own terms on September 30, 2017.  While Penumarthi was acting as a consultant, he referenced his role on his Facebook page inaccurately as Head of UK Operations for Long Fin.  In fact, Penumarthi has never been the "Head of UK Operations" of LongFin nor has he ever held a position in management with LongFin or otherwise been employed by the Company.  Penumarthi has never been a director of LongFin

and he has never been in a position to control the management or policies of LongFin. (Penumarthi Decl. at paras. 11 - 13)

## ARGUMENT

I. **THE SEC FAILED TO SHOW A LIKELIHOOD IT WILL BE SUCCESSFUL IN PROVING A SECTION 5 VIOLATION AS AGAINST THE INDIVIDUAL DEFENDANTS – ALL SALES WERE EITHER EXEMPT FROM REGISTRATION OR PROPERLY TRADED IN THE PUBLIC MARKET**

### A. Legal Standard for a Preliminary Injunction and Asset Freeze

The Second Circuit in *SEC v. Cavanaugh*, 155 F.3d 129 (2nd Cir. 1998) has set forth the legal standard that the SEC must meet to obtain a preliminary injunction and asset freeze. The Cavanaugh Court held that a "preliminary injunction enjoining violations of the securities laws is appropriate if the SEC makes a substantial showing of likelihood of success as to both a current violation and the risk of repetition. An asset freeze requires a lesser showing; the SEC must establish only that it is likely to succeed on the merits. Unlike a private litigant, the SEC need not show risk of irreparable injury." *Cavanaugh*, 155 F.3d at 132. *See also SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2nd Cir. 1990)("[E]ven when applying the traditional standard of "likelihood of success," a district court, exercising its equitable discretion, should bear in mind the nature of the preliminary relief the Commission is seeking, and *should require a more substantial showing of likelihood of success, both as to violation and risk of recurrence*, whenever the relief sought is more than preservation of the status quo."(emphasis added))

The SEC has failed to show by a preponderance of the evidence that it is likely to succeed on any of its claims. To establish a claim under Section 5 of the Securities Act, the SEC must prove that (1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication in the mails were used in connection with the sale or offer of sale. 15 U.S.C. §77e (a) and (c). It is undisputed that

Altahawi, Tammineedi and Penumarthi sold shares of LongFin Corp, but all of the sales either fall under an exemption to the registration requirements or involved free trading shares being bought and sold by non-affiliates.

### B.      Background on Section 5 and SEC Rule 144

The Securities Act requires the sale of a security to be registered with the SEC unless the security or transaction qualifies for an exemption from registration.  Rule 144 promulgated under the Securities Act provides a safe harbor that allows holders of restricted securities to resell their securities in the public market if specific conditions are met.  A person selling restricted securities who satisfies the applicable conditions of Rule 144 is deemed not to be an "underwriter" as defined in Section 2(a)(11) of the Securities Act, and therefore may rely on the Section 4(a)(1) exemption for the resale of securities.  Rule 144 provides a non-exclusive safe harbor under Section 4(a)(1) of the Securities Act and "[f]alling outside the Rule 144 safe harbor does not automatically make someone an underwriter.  An individual who fails to satisfy Rule 144 may still not be an underwriter after a fact-intensive analysis." *SEC v. Hemp, Inc.*, 2018 U.S. Dist. LEXIS 38396

Persons who are deemed affiliates of the issuer must comply with additional requirements to sell restricted securities, including that the issuer be current in is SEC filings.  An affiliate is a high standard to meet and is defined in Rule 144(a)(1) as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer." Under Rule 144, an "affiliate" is defined as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer."

An individual's status as an affiliate is a fact-specific inquiry which must be determined by considering all relevant facts.  *See, e.g., First Gen'l Resources Co.*, SEC No-Action Letter, [1988-89 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 78,251 at 78,253 (Aug. 23, 1988) ("[t]he Division

[of Corporation Finance] has historically declined to express any view on the affiliation of any person to an issuer of securities on the ground that the question is a matter of fact best determined by the parties and their advisors.").  The term "control" means the possession, direct or indirect, of the power to direct or cause the direction of management and the policies of a person, whether through the ownership of voting securities, by contract, or otherwise.  An individual's status as director, officer, or 10% shareholder is only one fact that must be taken into consideration in determining affiliate status.  *See, American Standard*, SEC No-Action Letter, 1972 SEC No Act. LEXIS 3787 at *1 (Oct. 11, 2972)(emphasizing a person's status as an officer, director, or owner of 10% of the voting securities of a company is not necessarily determinative of whether such person is a control person or member of a controlling group of persons).  Merely being colleagues or friends with a control person is not enough to deem somebody an affiliate of the issuer.

### C.    Altahawi is Not an Affiliate of LongFin

Under the standards set forth in Rule 144 it is clear that Altahawi was never an affiliate of LongFin.  First, Altahawi was never a director of LongFin.  Altahawi's being listed a director in a presentation was done in error by the person who prepared the presentation. (See Altahawi Decl. at para. 30)  Next, while Altahawi did serve as LongFin's corporate secretary for a short period of time at the company's request, Altahawi did not have the power to direct or cause the direction of the Company's management or policies.  Altahawi became secretary in July, 2017 and officially resigned his position as secretary effective September 30, 2017 which was over 90 days from Altahawi's first sale of his Consulting Shares.

Finally, Altahawi's equity ownership of three percent of the Company's outstanding stock pre-offering was well below the 10% threshold that the Commission often looks at when evaluating if a shareholder controls the Company.  Moreover, Altahawi, was not in a "control" relationship with the LongFin because several other stockholders and blocks of stockholders have

14

comparable or greater numbers of shares than Altahawi individually. In addition, Altahawi acquired his Consulting Shares to hold in the ordinary course of business and they were not acquired and are not held for the purpose of changing or influencing the control of the issuer of the securities.

Finally, there are no other indicia of control with respect to Altahawi. There are no familial relationships, no debtor-creditor relationships nor other business relationships between LongFin and Altahawi. While the Consulting Agreement entered into between Altahawi and LongFin continued to be in effect, the terms and intent of the Consulting Agreement do not support a "control" relationship between Altahawi and LongFin. Altahawis' Declaration at paragraphs 25-36 rebuts the SEC's allegations in detail that he was an affiliate of LongFin.

### D. Altahawi Satisfied the One Year Holding Period Requirement Under Rule 144(b)(1)

Rule 144 allows non-affiliates such as Altahawi to sell restricted securities if the applicable holding period is met. Here, Altahawi acquired his Consulting Shares on February 1, 2017 and held them for over one year before he began selling a portion of the Consulting Shares in March 2018. Altahawi's February 1st, 2017 consulting agreement is disclosed on every prospectus filed by LongFin with the SEC since inception. Furthermore, a copy Mr. Altahawi's consulting agreement reflecting his ownership of LongFin's shares was submitted to FINRA corporate finance through the Company's underwriter in or about September 2017. Altahawi's Consulting Agreement (attached as Ex. A to the Altahawi Decl.) grants him the Consulting Shares on February 1, 2017 and there are no contingencies or conditions placed on the grant of the Consulting Shares. Remarkably, the SEC admits in its Memorandum of Law that it did not even review Altahawi's Consulting Agreement prior to bringing this action and freezing his accounts.

The fact that Altahawi earned his Consulting Shares on February 1, 2017 is clearly stated in the disclosures referenced above (*See., e.g.* the September 18, 2017 Form 1-A POS stating "[t]he company has entered into an agreement with Mr. Andy Altahawi/Adamson Brothers Corp for the provision of filing Reg A + Tier 2, legal, structuring and business development for which Mr. Andy Altahawi has been issued 3% Class A common shares **as per the agreement** for his professional service rendered since inception."(emphasis added).

Under Rule 144(b)(1) Altahawi was entitled to sell his Consulting Shares beginning on February 1, 2018. This same conclusion is also reached in the legal opinion letter dated March 5, 2018 that was provided to Colonial Stock Transfer, LongFin's transfer agent, by Magri Law. The one year holding period is applicable even if LongFin was not current in its SEC filings at the time Altahawi sold part of his Consulting Shares.

### E.    Altahawi's Sales of his Consulting Shares Were Also Permitted by Rule 144(d)(1)

Rule 144(d)(1) also provides Altahawi with a separate basis for legally selling part of his Consulting Shares in March 2018. Rule 144(d)(1) provides a six-month holding period for restricted securities for an issuer that has been a reporting company for at least 90 days and is current in its SEC filings. *See* Rule 144(d). Rule 13a-13 requires an issuer to file "a quarterly report on Form 10-Q (§249.308a of this chapter) within the period specified in General Instruction A.1. to that form for each of the first three quarters of each fiscal year of the issuer, commencing with the first fiscal quarter following the most recent fiscal year for which full financial statements were included in the registration statement, or, if the registration statement included financial statements for an interim period subsequent to the most recent fiscal year end meeting the requirements of Article 10 of Regulation S-X and Rule 8-03 of Regulation S-X for smaller

reporting companies, for the first fiscal quarter subsequent to the quarter reported upon in the registration statement."

However, because LongFin qualified for an initial public offering pursuant to Regulation A, no registration statement is filed under the Securities Act, and the registration statement that is used in registering a "Tier 2" Regulation A offering is a Registration Statement on Form 8-A, which contains no financial statements. Accordingly, Rule 13a-13 does not squarely address the requirement to file quarterly reports by Registration A issuers, such as LongFin. In an apparent attempt to harmonize this mismatch between Rule 13a-13 and Registration A issuers, the SEC Staff has issued guidance under its "Compliance and Disclosure Interpretations" (formerly referred to as "Telephone Interpretations").

In response to a question the Staff poses concerning a Registration A issuer whose statement did not include financial statements for one or more quarterly periods (Question 182.23), the Staff states that "the staff would not object if" the Regulation A issuer filed a quarterly report on Form 10-Q in circumstances analogous to those where an issuer that included such financial statements in a registration statement under either the Securities Act or Exchange Act would be required to commence reporting. It is upon this guidance, phrased with the formulation "the staff would not object if," and not the plain language of Rule 13a-13, that the staff relies to support their contention that LongFin was not current with its SEC filings.

Furthermore, in late January or early February 2018 Altahawi sought the guidance of the Commission's staff regarding the Company's reporting obligations, and was informed by an attorney in the SEC's Division of Corporate Finance that LongFin was "up to date" as of that time. (See Altahawi Decl. at 42). Mr. Altahawi also had several discussions with the same attorney during the month of January 2018 regarding LongFin potentially satisfying its registration obligations regarding shares to be issued to an institutional investor by means of a continued

qualification under Regulation A, but the attorney made no mention of the 10-Q Position or the possibility it would be enforced on LongFin.  (See Altahawi Decl. at 43). The Staff then issued a comment letter to LongFin dated February 27, 2018, which made no mention of the fact that the Staff viewed LongFin to be delinquent in its filings under the Exchange Act, and LongFin was permitted to continue trading from January 8, 2018, to April 6, 2018.  On April 2, 2018, LongFin filed a complete Annual Report on Form 10-K containing more recent (and fully audited) financial statements – and, because it had by then been notified of the Staff's view regarding LongFin's compliance, checked the appropriate box on the cover page regarding failure to file all reports required under the Exchange Act.

Therefore, if Altahawi's holding period began to run on February 1st, 2017, well over six months elapsed by March 2018, the date that Altahawi began selling a portion of his Consulting Shares.

**F.   Altahawi's Sales of His Consulting Shares Are Also Exempt from Registration Pursuant to Section 4(a)(1) of the Securities Act.**

Even if Altahawi's sales of his Consulting Shares did not meet either requirement of Rule 144, his sales still complied with the exemption from registration contained in Section 4(a)(1) of the Securities Act.  Section 4(a)(1) of the Act exempts from registration "transactions by any person other than an issuer, underwriter, or dealer." A holder of securities who is not an issuer or a dealer (Such as Altahawi) can sell his securities without registration if the holder is not an underwriter as "underwriter" is defined in section 2(a)(11).   A person is considered an "underwriter" if he acquires securities with a view to "distribution" or is participating in a "distribution."

In determining whether securities were acquired with a view to engage in a distribution, courts generally consider whether or not the securities have "come to rest" with that shareholder.

18

This factor and its relevancy were highlighted in *Ackerberg v. Johnson,* 892 F.2d 1328 (8th Cir. 1989) when the court stated, "[w]e begin by considering whether the securities were acquired by Johnson with a view to their distribution… While this determination would at first seem to be a fact-specific inquiry into the security holder's subjective intent at the time of acquisition, the courts have considered the more objective criterion of whether the securities have come to rest.  That is, the courts look to whether the security holder has held the securities long enough to negate any inference that his intention at the time of acquisition was to distribute them to the public."  The court then went on to define when the securities had been held long enough to negate the inference of a distribution by citing *United States v. Sherwood*, 175 F. Supp. 480, 483 (S.D.N.Y. 1959)("The passage of two years before the commencement of distribution of any of these shares is an insuperable obstacle to my finding that Sherwood took these shares with a view to distribution thereof.")

Here, Altahawi held his Consulting Shares for over a year before reselling a portion of them.  While Altahawi's holding period did not quite meet the two year holding period that the *Sherwood* Court defined as an "insurmountable obstacle" for finding a Section 5 violation, Altahawi's lengthy holding period of over a year demonstrates that his Consulting Shares came to rest with him and were eligible for resale without violating Section 5 of the Securities Act.

G.    **Altahawi's Shares Acquired from the 10 Stockholders Could be Freely Traded; the Shares Were Purchased from Non-Affiliate Sellers Who Acquired Their Shares in LongFin's Regulation A Offering.**

The SEC alleges that Altahawi acquired 121,000 shares of LongFin stock from ten shareholders of LongFin and at least one of those sellers was an affiliate of LongFin.  However, the SEC's allegation that one or more of the sellers is an affiliate of LongFin is without merit. Each of the ten investors acquired their LongFin shares in the Company's Regulation A offering. Mr. Altahawi entered into a stock purchase agreement with those ten investors to acquire their

shares for $30 per share, which was about the current market price at the time the agreement was entered into.  Because none of the ten shareholders were affiliates of LongFin and because Altahawi was not an affiliate of LongFin, Altahawi was permitted to freely sell the 121,000 LongFin shares he acquired from the ten other shareholders.

### H.    Tammineedi's and Penumarthi's Sales of LongFin Stock Did Not Violate Section 5 of the Securities Act

Defendants Tammineedi and Penumarthi's sales of LongFin shares did not violate the Section 5 registration requirements because they were not affiliates of LongFin and all of their shares involved free trading shares that were properly acquired and paid for under LongFin's Regulation A offering.  First, the SEC has not proven that Tammineedi and Penumarthi were affiliates of LongFin for purposes of Rule 144.  Neither Tammineedi nor Penumarthi were under the common control of LongFin or Meenavalli  (*See* Tammineedi Decl. at paras. 12-13: Penumarthi Decl. at para. 11)  The SEC's argument that being business colleagues and close associates of Meenavalli (SEC Memo of Law at 19), even if true, does not give rise to a relationship of control by Meenavalli over Tammineedi and Penumarthi.  The SEC's argument that Meenavalli and Penumarthi were both directors of Smartahead Solutions Ltd. ("Smartahead") is also without merit because Meenavalli resigned as Director of Smartahead on June 5, 2013.  Moreover, Smartahead does not control and is not controlled by LongFin.   In addition, the SEC's allegation that Tammineedi is a director of Stampede is without merit.  Tammineedi resigned as a director from Stampede on October 20, 2017.  (Tammineedi Decl. at 8-9)  Moreover, Tammineedi does not hold any equity in Stampede and is not in a position to control LongFin.

The evidence demonstrates that Tammineedi works in his own business in India and he has never held a management position with LongFin Corp., nor has he ever been an officer or director of LongFin.  The allegation that Tammineedi is an affiliate or nominee of LongFin or Meenavalli

is simply without merit.  Tammineedi made all of his own investment and trading decisions with regards to his investment in LongFin.  Tammineedi is also not related by blood or marriage to Meenavalli.  Mr. Tammineedi's status as a former director the company LongFin acquired also does not trigger a "control" relationship between Tammineedi and LongFin. The SEC's allegations based on an "internet search" that triggered results of a "Facebook page" for Penumarthi are plainly insufficient to justify the extreme relief sought by the SEC in this matter, particularly when the SEC's allegation have been denied by Mr. Penumarthi's in his sworn Declaration.

The SEC has also failed to establish that Penumarthi is an affiliate of LongFin.  The declarations submitted herewith demonstrate that Penumarthi made all of his own investment and trading decisions with regards to his investment in LongFin.  Penumarthi is also not related by blood or marriage to Meenavalli.  Penumarthi was never an officer, director or 10% shareholder of LongFin and was not in a position to control the Company's policies.  Penumarthi is also not related by blood or marriage to Meenavalli.  While Penumarthi did enter into an agreement with LongFin Corp dated July 1, 2017 to act as a consultant to LongFin Corp., that consulting agreement terminated on September 30, 2017.  While Penumarthi was acting as a consultant, he referenced his role on his Facebook page inaccurately.  In fact, Penumarthi has never been the "Head of Operations" of LongFin nor has he ever held a position in management with LongFin or otherwise been employed by the Company.  Penumarthi has never been a director of LongFin and he has never been in a position to affect the management or policies of LongFin.

Tammineedi and Penumarthi both acquired their LongFin shares in the Company's Regulation A offering.  Because Tammineedi and Penumarthi are independent investors and not affiliates of LongFin and they acquired their shares in a Regulation A offering they were able to freely sell those shares in the public market.

21

## II. THE SEC CANNOT MEET ITS BURDEN TO SHOW SECONDARY LIABILITY FOR A SECTION 5 VIOLATION BY VENKATA MEENAVALLI – THERE IS NO "PRIMARY" VIOLATION AND MEENAVALLI'S INVOLVEMENT NOT A "SUBSTANTIAL FACTOR"

An indirect participant, who has not himself passed title to an unregistered security, may be liable for its offer or sale only in certain narrow circumstances. The "necessary participant test ... essentially asks whether, but for the defendant's participation, the sale transaction would not have taken place"-in other words, whether the defendants' acts were a "substantial factor in the sales transaction." *SEC v. Murphy,* 626 F.2d 633 at 651-52 (9th Cir. 1980). Courts in this Circuit have repeatedly stated that "substantial assistance" means that "*but for the defendant's participation*, the sale transaction would not have taken place." *SEC v. Universal Exp.,* 475 F.Supp.2d 212, 422 (S.D.N.Y. 2007) (quoting *SEC v. Murphy,* 626 F.2d 633, 651 (9th Cir. 1980)) (emphasis added); *SEC v. East Delta Resources Corp.*, 2012 U.S. Dist. LEXIS 127644 at *9 (E.D.N.Y. Aug. 31, 2012); *SEC v. Elliott*, 2011 U.S. Dist. LEXIS 91946 at *21 (S.D.N.Y. Aug. 17, 2011). In *SEC v. Czarnik*, No. 10 Civ. 745, 2010 WL 4860678 (S.D.N.Y. Nov. 29, 2010), the defendant helped the issuers complete reverse mergers, obtain a NASDAQ ticker, drafted and filed documents, representation letters, subscription agreements, legal opinions and transferred them to the transfer agent, a stark contrast to the lack of involvement by Mr. Meenavalli in this case. And in *SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012), the defendant actually negotiated the fraudulent transactions; here, Mr. Meenavalli was not involved in the Section 5 violations alleged by the SEC. As explained by Judge Holwell in *Elliott*, the "substantial participation" test "is a concept without precise bounds, 'but' one who plans a scheme, or, at the least, is a substantial motivating factor behind it, will be held liable as a seller." *Id., citing SEC v. Rogers*, 790 F.2d 1450, 1456 (9th Cir.

1986), *overruled on other grounds by Pinter v. Dahl*, 486 U.S. 622, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988).

For the reasons set forth above, Altahawi's, Tammineedi's and Penumarthi's sales did not violate the Section 5 registration requirements.  Therefore, since there was no primary violation of Section 5, Defendant Meenavalli cannot be held liable as a secondary actor.  *SEC v. Ralston Purina Co.,* 346 U.S. 119, 126 (1953)(a defendant may rebut a prima facie case by showing that the securities involved were not required to be registered.)

Moreover, the SEC's allegations of Meenavalli's role do not meet the "substantial assistance" test required in this Circuit.  Specifically, the SEC alleges that Meenavalli "signed the LongFin corporate resolution," "kept the public float low" and "provided Altahawi with the majority of the public float."  *See*, Memo of Law at 21.  The SEC alleges by taking these steps, Meenavalli "facilitated Altahawi's unregistered sales" and he therefore "participated" in (and is liable for) those sales.

The critical facts missing from the SEC's allegations are damning: (1) the "corporate resolution" Meenavalli signed arose from LongFin's *February 1, 2017* payment to Altahawi of the Consulting Shares.  LongFin made that payment t to Altahawi on February 1, 2017, more than four months before LongFin even knew the SEC would qualify it for a Regulation A offering and more than nine months before LongFin's IPO.  (2) All objective evidence suggests Meenavalli took steps to *increase* the public float, not "keep it low."  LongFin went public offering  1,140,989 shares of Class A common stock to the public. The fact that LongFin's shares started trading on Nasdaq on December 13, 2017 on a volume of only 297,367 shares is something clearly beyond Meenavalli's control, but hardly evidence of an intent to "keep the float low."  (3) Finally, the number of shares to which Altahawi was entitled was determined in a February 1, 2017 contract LongFin entered into nearly a year before LongFin's IPO in December 2017.  Meenavalli didn't

"provide" Altahawi with *any* "public float" because there was no public market for LongFin's shares at the time the contract giving rise to Altahawi's shares was entered into. Moreover, LongFin disclosed the terms of the Consulting Agreement in all of its SEC filings, beginning in March 2017. The SEC clearly had access to this information prior to issuing LongFin a Notice of Qualification for the Reg A offering.

The SEC's allegations of Meenavalli's alleged role do not meet the "substantial assistance" test required in this Circuit and the Order should be vacated as against him.

### III.   THE COURT MUST CONSIDER FAIRNESS TO THE DEFENDANTS AND THE ADVERSE EFFECT OF AN INJUNCTION AND ASSET FREEZE

The Defendants contend that evidence demonstrates the issuance of a preliminary injunction and asset freeze against them is inappropriate because of the resulting harmful impact on their professional reputations and legitimate business activities. In addition, the SEC has failed to demonstrate that there is any risk of reoccurrence of the alleged violations as required by the Second Circuit in the *Cavanaugh* and *Unifund* decisions.

In deciding whether to grant injunctive relief, a district court is called upon to assess all those considerations of fairness that have been the traditional concern of equity courts. *Hecht Co. v. Bowles*, 321 U.S. 321, 328-30 (1944). Accordingly, the adverse effect of an injunction upon defendants is a factor to be considered by the district court in exercising its discretion. *SEC v. Harwyn Industries Corporation*, 326 F.Supp.943 at 957 (S.D.N.Y. 1971); *SEC v. Broadwell Securities, Inc.,* 240 F.Supp. 962, 967 (S.D.N.Y.1965). To obtain an asset freeze, the Commission "must show either a likelihood of success on the merits, or that an inference can be drawn that the party has violated the federal securities laws." *Smith v. SEC*, 653 F.3d 121, 128 (2nd Cir. 2011)(quotation omitted). As demonstrated above the SEC has failed to show a likelihood of

success on the merits or that any of the Individual Defendants have violated the federal securities laws.

In addition, the SEC's arguments that an asset freeze is appropriate in this matter because there is a risk that the sales proceeds will be moved beyond the jurisdiction of this Court is without merit, particularly as applied to Altahawi. Altahawi is a United States citizen with a sole residence in Sunny Isles Florida. All of the cases the SEC cites in its Memorandum of Law to justify an asset freeze concern individuals who were not United States Citizens and are therefore inapplicable. (See SEC Memo of Law at 24-25). Moreover, Altahawi has never tried to transfer funds outside of the United States and the SEC's citation to Altahawi's attempt to transfer some of the sales proceeds from his Merrill Edge account into his personal domestic Bank of America account (SEC Memo of Law at 24) do not in any way support the argument that the sales proceeds would be placed in a foreign account beyond the jurisdiction of this Court. Altahawi has over 24 years' experience in the United States securities industry. Altahawi received his Consulting Shares as compensation for services he provided to the Company and imposing an asset freeze on these proceeds deprives Altahawi from reasonably using these assets to pay his legitimate living and business expenses.

The asset freeze has already caused substantial hardship to Altahawi and unfairly prevented him from paying legitimate personal and business expenses. In addition, Altahawi has already lost two clients from his consulting business as a result of the temporary restraining order and asset freeze and he anticipates that he will lose a significant number of other clients and their related income if the Court issues a preliminary injunction and makes a finding that the SEC has established a likelihood of success on the merits of their claims. (Altahawi Decl. at para 48).

In addition, at the time that the SEC brought this litigation my company Adamson Brothers had an application pending at the Financial Industry Regulatory Authority ("FINRA") for a

securities broker-dealer license.  Altahawi has already spent a significant amount of funds on preparing the FINRA application and getting Adamson Brothers in a position to have the resources needed to be a licensed broker-dealer.  (Altahawi Decl. at 49-50)

Imposing an asset freeze against the sales proceeds earned by Tammineedi and Penumarthi is also impermissible because the SEC has failed to demonstrate a likelihood of success on the merits of its claim that Tammineedi and Penumarthi violated Section 5 of the Securities Act.

The asset freeze has made it difficult for Tammineedi to meet his regular expenses and Tammineedi is suffering with a cash crunch.  (Tammineedi Decl. at  para. 17).

Imposing an asset freeze against the sales proceeds earned by Tammineedi and Penumarthi is also impermissible because the SEC has failed to demonstrate a likelihood of success on the merits of its claim that Tammineedi and Penumarthi violated Section 5 of the Securities Act.

## **CONCLUSION**

For the foregoing reasons, the Individual Defendants respectfully request that the Court deny the SEC's Motion in its entirety.

Dated: New York, New York
     April 17, 2018

                      Respectfully Submitted,

                      MEYERS & HEIM, LLP

                       /s/ Robert Heim
                      Robert G. Heim
                      1350 Broadway, Suite 514
                      New York, NY  10018
                      Tel: (212) 355-7188
                      Fax: (212) 355-7190
                      rheim@meyersandheim.com
                      *Attorneys for Defendants Venkata S. Meenavalli, Amro Izzelden Altahwi a/k/a Andy Altahawi, Suresh Tammineedi and Dorababu Penumarthi.*

WORD COUNT CERTIFICATION

     I hereby certify that the number of words in the foregoing Memorandum of Law, excluding the cover page, certification of compliance, table of contents and table of authorities is 8759 as counted by Microsoft Word.

                       /s/ Robert Heim
                       Robert Heim

## CERTIFICATE OF SERVICE

I hereby certify that, on April 17, 2018, the foregoing DEFENDANTS VENKATA S. MEENAVALLI, AMRO IZZELDEN ALTAHWI a/k/a ANDY ALTAHAWI, SURESH TAMMINEEDI AND DORABABU PENUMARTHI'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR A PRELIMNINARY INJUNCTION was served by ECF upon the following counsel for the parties:

Sarah Heaton Concannon, Esq.
Trial Counsel
U.S. Securities and Exchange Commission
Division of Enforcement
100 F Street, N.E.
Washington, DC 20549-5937
Tel: (202) 551-5361
Facsimile: (202) 772-9292
ConcannonS@SEC.gov
*Counsel for Plaintiff Securities and Exchange Commission*

Kevin C. Lombardi, Esq.
Trial Attorney
U.S. Securities and Exchange Commission
Division of Enforcement
100 F Street N.E.
Washington, DC  20549
Tel: (202) 551-8753
Facsimile: (202) 772-9291
lombardik@sec.gov
*Counsel for Plaintiff Securities and Exchange Commission*

Jay K. Musoff, Esq.
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4212
Facsimile: (646) 619-4169
E-mail: jmusoff@loeb.com
*Counsel for Defendant Longfin Corp.*

/s/ Robert Heim
Robert Heim

29